Joyce **CLAYBON**, individually and as next friend of John Doe and John Doe, Plaintiffs/Appellants,

v.

**MIDWEST PETROLEUM COMPANY**, Defendant/Respondent.

No. 58921.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 24, 1991.

Gerald Michael Dunne, St. Louis, for plaintiffs/appellants.

Colleen C. Jones, St. Louis, for defendant/respondent.

CRANE, Judge.

This is an appeal from the grant of Summary Judgment for defendant, Midwest Petroleum Company, in an action for the wrongful death of Reginald Claybon. Plaintiffs are Joyce Claybon, Reginald's mother, in her individual capacity, and as the "Next Friend" of John Doe, Reginald's two year old son. Midwest Petroleum Company [Midwest] is the owner of a service station on whose premises Reginald Claybon was shot. We affirm.[1]

■ Summary judgment is recognized as a drastic remedy, since it denies the opposing party his or her day in court. *Olson v. Auto Owners Ins. Co.*, 700 S.W.2d 882, 884 (Mo.App.1985). In order for summary judgment to be granted, the pleadings, depositions, admissions, and affidavits filed must show there is no genuine issue as to any material fact. *Id.* On review of a grant of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require trial, and determine if the judgment is correct as a matter of law. *Union Mutual Ins. Co. v. Brown*, 809 S.W.2d 144,

---

1. This case comes to the writer on reassignment. Judge Stephan wrote a substantial part of this opinion, including the discussion of Points I and III.

145 (Mo.App.1991). If the judgment is sustainable as a matter of law under any theory we will affirm it. *Id.* Since the deletion of subsection (h) from Rule 74.04 in 1988, it is no longer necessary to support a motion for summary judgment by "unassailable proof." *Id.; Defino v. Civic Center Corp.,* 780 S.W.2d 665, 667–68 (Mo.App. 1989).

On December 1, 1985, Reginald Claybon was present at a Sunoco service station in Pagedale, Missouri, owned and operated by Midwest. Plaintiffs alleged that Claybon was an invitee applying for future employment or discussing future employment with Earl Jones, the employee on duty. While Claybon and Jones were talking in the cashier's booth, two men entered the building, produced a gun, announced, "This is a holdup!" and ordered Claybon and Jones to go to the back of the station. One of the assailants told Jones to remove the station's holdup device.[2] Claybon began to struggle with one of the subjects and was shot in the side. As one of the robbers retrieved the money in the station, the other proceeded to shoot Claybon in the head, and Jones in the back. Claybon died as a result of his injuries.

Plaintiffs submitted interrogatories to Midwest. In its answers, Midwest admitted owning and operating the Sunoco service station, having acquired this particular business on November 25, 1985, just six days before the shooting. It also acknowledged that Earl Jones was the employee on duty at the time of the incident, but stated that Claybon was not supposed to be on the premises, except as a customer. Midwest further answered that there was no criminal activity on these premises between the period of November 25, 1985, and December 1, 1985. It added that "for any date prior to that time the answer is unknown."

Midwest filed a motion for summary judgment with an accompanying affidavit. In its motion it contended that it was not liable for Claybon's death, because it was not aware of any similar prior incidents of crime. It contended that plaintiffs' allegations that the area was a high crime area and that service stations in general are favorite targets of crime were mere speculation. In opposition to the motion, plaintiffs filed the affidavit of Joyce Claybon, which incorporated the police report. On July 16, 1990, Midwest's motion for summary judgment was granted.

Plaintiffs filed a motion to reconsider, along with the affidavits of Earl Jones, George Seper, a former police officer, and June Jones, custodian of records for the Pagedale Police Department. The motion for summary judgment was reheard on August 15, 1990 and was again granted. It is from this judgment plaintiffs now appeal.

■ In an action for negligence, plaintiff must establish (1) a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from that failure. *Faheen v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo.App.1987). Generally, the owner of a business property has no duty to protect an invitee from a deliberate criminal attack by a third person. *Keenan v. Miriam Foundation,* 784 S.W.2d 298, 301 (Mo.App.1990). This is true even though the area is one of "high crime." *Id.* at 302.

■ There are, however, exceptions to this general rule. The owner of business property may be liable when "special relationships" or "special facts and circumstances" exist. *Meadows v. Friedman R.R. Salvage Warehouse,* 655 S.W.2d 718, 721 (Mo.App.1983). "Special relationships" arise where a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Faheen,* 734 S.W.2d at 272. Typically, special relationships include: common carrier-passenger, school-student, innkeeper-guest, and sometimes employer-employee. *Id.*

■ The "special facts and circumstances" exception encompasses two theories: (1) the intentional infliction of injury

---

**2.** The holdup device could be hand held or carried in the employee's shirt pocket. When activated, an alarm would sound at the police station to which officers would promptly respond, typically in less than two minutes.

by known and identifiable third persons; or (2) frequent and recent instances of violent crimes against persons on the premises by unknown assailants. *Faheen,* 734 S.W.2d at 272; *Keenan,* 784 S.W.2d at 302. Under the first theory, a duty may be recognized when a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger. *Faheen,* 734 S.W.2d at 273; *Keenan,* 784 S.W.2d at 302. The second theory, referred to as the "violent crimes" exception, imposes a duty on a landowner for premises liability when certain elements exist. *Faheen,* 734 S.W.2d at 273–74; *Keenan,* 784 S.W.2d at 303.

Plaintiffs claim the trial court erred in denying their motion for summary judgment because they claim Midwest owed a duty to protect Reginald Claybon as a matter of law under the "special relationships" and "special facts and circumstances" exceptions and because Midwest voluntarily assumed such a duty. Viewing the evidentiary record in the light most favorable to the plaintiffs, we find no genuine issue of fact exists and that as a matter of law, this record does not establish that Midwest had a duty under any of these theories to protect Claybon.

■ Plaintiffs first contend that a "special relationship" of employer-employee existed between Midwest and Reginald Claybon. They rely on the description of Claybon as Midwest's employee in the police report. However, neither party alleged nor admitted that Claybon was an employee. The plaintiffs' petition states that Claybon "was an invitee applying for future employment." Reginald Claybon's name is notably absent from the list of employees Midwest had submitted in answer to plaintiffs' interrogatory. Plaintiffs did not object to these answers. As neither plaintiffs nor Midwest believed Claybon was Midwest's employee, it was certainly not erroneous for the trial court to find there was no genuine issue as to this fact.

Moreover, even if Claybon was Midwest's employee at the time of the incident, his presence at the station did not create a "special relationship" between himself and Midwest. The evidence is clear that Claybon was not working when he was shot; rather, he was on the premises only as a member of the general public. We previously noted that the employer-employee relationship does not always constitute a "special relationship." We refuse to include in this relationship, a situation, as here, where the employee is on the premises as a member of the general public, to which the rule of nonliability typically applies. Accordingly, we find that no "special relationship" existed between Claybon and respondent. Point one is denied.

■ For their second point plaintiffs contend that Midwest owed a duty to protect Reginald Claybon under the "special facts and circumstances" exception because Midwest knew of the assailant's identity prior to the attack and because service stations are frequent targets of crime. We disagree.

In opposing the motion for summary judgment, plaintiffs relied on the affidavit of Earl Jones, the only employee on the premises, and a second affidavit which incorporated the police report of the incident and reinforced Jones' statements in his affidavit. Jones stated that the two assailants had been in the service station twice that same day, before they returned for the third violent confrontation. Initially, Jones encountered the two individuals sometime in the afternoon, when they attempted to obtain cash by using a Sunoco credit card. They were unsuccessful because this was against company policy. They returned at approximately 6:30 p.m., at which time they received $11.00 worth of gasoline. Since they did not have any money or a credit card to pay for the purchase, one subject remained at the station until the other returned and paid for the gas. The assailants returned to the station a third time, at approximately 7:40 p.m., and sat in the parking lot in their car, observing the station's office. They remained in this posture for approximately twenty minutes, arousing Jones' suspicion and causing him to record the license number of their vehicle. The men waited for a customer to

leave before they entered and robbed the station at gunpoint.

Plaintiffs argue that Midwest owed a duty to the victim because an individual was present on the premises in such a way as to indicate danger, and there was sufficient time to prevent injury. Under the "special facts and circumstances" theory of liability upon which plaintiffs rely, a duty arises on the part of a property owner to protect an invitee when either 1) an individual known to be violent is on the premises or 2) an individual is present who has conducted himself in a manner to indicate danger and sufficient time exists to prevent injury. *Faheen*, 734 S.W.2d at 273. Plaintiffs' second amended petition did not allege any duty under this theory. Even if they had amended their petition to include this allegation, their affidavits did not support it.

In *Pizzurro v. First North Cty. Bank & Trust Co.*, 545 S.W.2d 348 (Mo.App.1976), the plaintiff was struck by another bank customer (her husband) as he was leaving the bank with undeposited funds. Earlier plaintiff had told a bank employee to call the police after she became suspicious that her husband was going to leave with undeposited funds. Her suspicion was based on her husband's request to a bank official to let him leave by a rear door. The operator did not make the call until a second request was made 10 minutes later. We affirmed a directed verdict for the bank because the bank did not have any information that would indicate a violent disturbance might take place. We held "where there was no loud talking, threatening language or unusual physical movements, it cannot be said that the bank was given reasonable opportunity to anticipate a violent assault...." *Pizzurro*, 545 S.W.2d at 350.

In this case, the affidavits do not show that the assailants had behaved in a manner indicating they were about to become violent or dangerous. According to Jones' affidavit, the assailants had conducted themselves peaceably on both previous visits to the Sunoco station. On the third visit, prior to the assault, the assailants sat in their car on the station's parking lot for approximately 20 minutes, observing the station's office. Jones became suspicious and wrote down the car's license number. Although the 20 minute stay on the parking lot had aroused Jones' suspicion enough to record the license number, Jones did not activate the holdup device. Earlier that day one of the assailants had remained on the premises for fifteen minutes without incident while waiting for the other to return with the money for gasoline. Nothing in the affidavits or incorporated exhibits indicates that prior to the assault the assailants had displayed firearms or weapons, used loud or threatening language, or otherwise acted in a physically threatening manner. Under the admitted facts, the assailants did not conduct themselves in a manner which indicated imminent danger until the holdup began. No genuine issue of material fact exists which would require trial on this issue.

Plaintiffs next argue that "special facts and circumstances" exist under the "violent crimes" exception because service stations are frequent targets of crime. Plaintiffs rely on the affidavit of a retired city police detective who stated: "That self service gas stations which did not have security booths which restricted access by the public to the cash register were frequent targets of robbery, assault, murder and other violent crimes in the St. Louis Metropolitan area between 1975 and 1985." In his affidavit, the retired detective gave his opinion that Midwest's failure to equip its station with a security booth made it a foreseeable crime target. These conclusionary allegations do not constitute evidence of "specific facts showing there is a genuine issue for trial" as required by Rule 74.04(e).

Moreover, the exception upon which plaintiff relies requires proof of "necessary relationship" and "frequent and recent instances of violent crimes against persons on the premises by unknown assailants." *Faheen*, 734 S.W.2d at 273; *Keenan*, 784 S.W.2d at 302. Special facts and circumstances do not exist merely because the area may be one of "high crime." *Faheen*, 734 S.W.2d at 273; *Meadows*, 655 S.W.2d

at 721. We have already held no special relationship existed. Plaintiffs presented no evidence of frequent or recent incidents of violent crimes against persons on the premises. To the contrary, Midwest filed an affidavit that no violent crimes had occurred on the premises during the six days it owned the station prior to the crime. For the same reasons special facts do not exist simply because an area is one of high crime, special facts do not exist simply because a business is alleged to belong to a class which may be a "frequent" target of crime. No genuine issue of material fact exists which would support a duty under this exception. Point two is denied.

■ Finally, plaintiffs contend in point three that Midwest voluntarily assumed a duty to protect Claybon from criminal attack when he was allowed into the cashier's area at the station. A property owner may voluntarily assume a duty to protect an invitee on its premises from the criminal attacks of third persons, as well as having such a duty imposed by law. *Keenan,* 784 S.W.2d at 303. In determining the level of care required of the landowner or business, the number of prior incidents of crime is a highly relevant factor. *Id.* at 304. The trier of fact must utilize this data to determine whether the required level of care was provided and whether the duty was breached. *Id.*

In the present case, there is no evidence that Midwest agreed to assume a particular duty of care with regard to Reginald Claybon. Jones stated in his affidavit that Claybon was present in the station, or cashier's booth. However, he further said that the station's office, containing the cash register, was open to customers and other visitors. Thus, Claybon was in a public area of the station until ordered into the back room by the two assailants. Unlike the situation in *Keenan,* Midwest did not invite Claybon to an area it represented to be safe or undertake to provide a secure area for Claybon. In light of these facts, we find that Midwest did not voluntarily assume a duty to protect Reginald Claybon from criminal attacks of third persons. As such, we need not address the level of care

required by the landowner. Point three is denied.

The judgment of the trial court is affirmed.

REINHARD, P.J., concurs.

STEPHAN, J., dissents in a separate opinion.

STEPHAN, Judge, dissenting.

I respectfully dissent from the position taken upon reassignment by the majority with respect to appellants' Point II in the majority opinion. As indicated therein, plaintiffs claim that summary judgment was inappropriate because "special facts and circumstances" exist under the "violent crimes" exception because service stations are frequent targets of crime. Specifically, plaintiffs point to the affidavit of a retired police detective who stated that service stations without security booths and with unrestricted public access to the cash register were frequent targets of robbery, assault, murder, and other violent crimes in the St. Louis area between 1975 and 1985.

The trial court was also presented with an affidavit of Earl Jones, the employee on duty when the shooting occurred. Jones stated that the two assailants had been in the station twice that same day, before they returned for the third violent confrontation. Initially, Jones had encountered the two individuals sometime in the afternoon, when they attempted to obtain cash by using a Sunoco credit card. They were unsuccessful because this was against company policy. They returned at approximately 6:30 p.m., at which time they received $11.00 worth of gasoline. Since they did not have any money or a credit card to pay for the purchase, one subject remained at the station until the other returned and paid for the gas. The assailants returned to the station a third time, barely an hour later at approximately 7:40 p.m., and sat in the parking lot in their car, observing the station's office. They remained in this posture for approximately twenty minutes. Well intentioned persons do not ordinarily simply sit and watch sales

of gasoline being rung up on a cash register. Jones recognized this when he recorded the license number of their vehicle. The men then waited for a customer to leave, before they entered and robbed the station at gunpoint. A second affidavit presented to the trial court incorporated the police report, which reinforces the statements Jones made in his affidavit.

I believe that the facts and circumstances detailed in the aforementioned affidavits present a question of fact as to whether the assailants' conduct would lead a reasonable person to believe that danger was imminent. Upon such a finding, there would exist a duty on the part of the owner of the premises to protect an invitee thereon from possible harm. *Nappier v. Kincade*, 666 S.W.2d 858, 861 (Mo.App.1984). Jones' failure to activate the holdup device in his possession does not militate against a finding of liability but underscores the gravity of his failure to take an appropriate measure to protect his customer.

I would reverse and remand for trial.