Larry GROCE, Marty Groce and Travis Groce, Appellants,

v.

KANSAS CITY SPIRIT, INC., Respondent.

No. WD 51146.

Missouri Court of Appeals, Western District.

April 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Application to Transfer Denied Aug. 20, 1996.

---

Sylvester James, Jr., Brian C. Fries, Kenner & James, Kansas City, for appellants.

David R. Buchanan, Robert H. Houske, Brown & James, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiff Travis Groce suffered serious injury when he was attacked by an unknown third party after he left the Kansas City Spirit Festival. Mr. Groce and his parents (Plaintiffs) brought a negligence action against Defendant Kansas City Spirit, Inc., organizer of the Kansas City Spirit Festival (hereinafter "Festival"). The trial court granted summary judgment in favor of Defendant Festival on the ground that the assault did not occur on property owned or controlled by Defendant. We affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

On August 31, 1991, Plaintiff Travis Groce and two friends attended the Kansas City Spirit Festival. The Festival was being held in Liberty Memorial Park in Kansas City. The Park is located west of Main Street, east of Broadway, south of Pershing Avenue and north of Memorial Drive. The Festival organizers had erected a fence around the area of the Park in which the Festival activities were held. Entry to the fenced-in area could be obtained only at gates located at four locations around the fence perimeter. Each gate was normally staffed by a person selling tickets to the Festival.

At about 1:00 a.m., after spending several hours at the Festival, Mr. Groce and his friends joined a large number of other people leaving the fenced-in area of the Festival at Gate 2. The Festival was ending and the gate area was no longer being staffed. Mr.

Groce and his friends headed southeast toward Mr. Groce's vehicle, which he had parked east of Main Street and south of Liberty Memorial Park. To reach the vehicle, they crossed Memorial Drive and a grassy area south of Memorial Drive, until they reached the sidewalk that runs along the west side of Main Street. The Festival organizers had requested that the police block off this portion of Main Street with cement barricades to regulate traffic through the area, thus creating a pedestrian thoroughfare. Only limited vehicular traffic was allowed in this area. Mr. Groce and his friends joined a crowd of approximately 200 people walking down or across Main Street.

As they proceeded south on the sidewalk, they saw a group of 15 to 20 young men, all dressed in black and gold, sitting along a wall next to the sidewalk. Although the young men were talking loudly, there was nothing about their mannerisms that caused Mr. Groce and his friends to be concerned.

In part because this group of young men was blocking the sidewalk and in part because they had to cross Main Street at some point to get to their vehicle, the three friends turned to cross the blocked-off portion of Main Street. Just as they reached the middle of Main Street, one of the young men ran up from behind and struck Mr. Groce. Mr. Groce was seriously injured. He spent several weeks in a coma and was hospitalized for several months.

The assailant was never identified. Mr. Groce and his parents, however, brought suit against Defendant Festival, alleging that the Festival owed a duty to protect Mr. Groce from intentional criminal harm by third persons or to warn Mr. Groce that harm could occur if he attended the Festival. This duty was based upon the Festival organizers' alleged knowledge of incidents of crime that had occurred during and within the boundaries of the Festival in prior years as well as on the week-end of that year's Festival but prior to this incident.

The Festival sought summary judgment on the basis that the incident in which Mr. Groce was injured occurred in a public area outside the exclusive control of the Festival so that the Festival had no duty to protect

Mr. Groce from the third-party assault of which he complains. In support, the Festival cited the deposition testimony of Mr. Groce and his two friends and that of two Festival employees: Timothy Smith, Executive Director of the Festival, and Peter Dreyfuss, Chairperson of the Festival's Production Committee.

Mr. Smith stated that the Festival was responsible only for the area inside the fence line. Anything on the other side of the Festival gate or outside the perimeter of the fence line was considered off-premises. He also testified that a security plan for the Festival was generated by the Kansas City, Missouri Police Department. The Department received input on the plan from Mr. Smith and from Mr. Dreyfuss, who was responsible for internal Festival security arrangements. Security forces consisted of mobile tactical response teams of on-duty Kansas City police officers who patrolled the area outside the fence. The Festival hired police response teams composed of pairs or squads of off-duty officers to patrol within the fence. These officers were assigned to move with the crowds and respond as needed. An off-duty officer was also posted at each gate at times when money was being collected. In addition, the Festival hired private security officers to fill specific posts and to act as rovers who could summon additional security officers if necessary. Police officers were also assigned some fixed posts, although police response teams would respond when needed.

The Festival guidelines did not directly prohibit any Festival security officer from going outside of the fence line if the officer felt it was part of his or her public responsibility of being a police officer to do so. Officers stationed at the admission gates were directed not to leave their posts, however, although they could report a disturbance to the command post, which would then dispatch a response team. Plaintiffs presented evidence that, on two occasions, off-duty police officers nonetheless responded to a security-related event which occurred outside of the fenced area.

Security was overseen at a security command post located in Trinity North Hospital. The Hospital was adjacent to the Festival grounds and had a door inside the fenced area by which Festival and security personnel could enter. The command post served as a center to coordinate internal (within the Festival fences) and external (outside the Festival fences) security and was run by an on-duty police officer. In addition, the building in which the command post was located served as a break area for off-duty police officers. The only Festival personnel permitted in the command post center itself were Mr. Smith and Mr. Dreyfuss, however.

At the request of the city police and traffic departments, the Festival organizers requested a permit to close the streets around the Festival. The Festival provided the barricades to block the streets. The barricades were manned by on-duty police officers.

The Festival contended that, based on these facts, it owed no duty to Mr. Groce because the attack on him occurred outside the fence which marked the outside perimeter of the property controlled by the Festival. Plaintiffs contended that the Festival premises extended beyond the fence and included the blocked-off area of Main Street where Mr. Groce was attacked. Alternatively, Plaintiffs contended that, even if the Festival's premises were considered to have ended at the fence line, it could be held liable for events occurring off of its premises upon a showing that the Festival controlled the area where the assault occurred and that it knew patrons would have to cross the blocked off area to get to their cars, yet failed to provide adequate security. They asserted the facts noted above showed such control.

The trial court granted judgment in favor of Defendant, finding that Plaintiffs were unable to show that the area in which Mr. Groce was assaulted was part of Defendant's premises or that Defendant was controlling pedestrian traffic in this area. Furthermore, the trial court found that, even if Defendant had control of this area, Plaintiff had failed to provide evidence to show that an assault of this type was foreseeable. This appeal followed.

## II. *LEGAL ANALYSIS*

### A. *General Omission; Rules Regarding Liability For Criminal Attacks By Third Party.*

■ In an action for negligence, the plaintiff must establish: (1) a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from that failure. *Claybon v. Midwest Petroleum Co.*, 819 S.W.2d 742, 743 (Mo.App.1991); *Faheen v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo.App.1987). The dispositive issue here is whether Plaintiffs can establish the first element, i.e., whether they can show that the Festival had a duty to protect Mr. Groce from injury.

■ Generally, the owner of a business property has no duty to protect an invitee from a deliberate criminal attack by a third person. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988); *Keenan v. Miriam Found.*, 784 S.W.2d 298, 301 (Mo.App.1990). Policy reasons for refusing to impose such a duty include:

> judicial reluctance to tamper with a traditional, common law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector.

*Faheen,* 734 S.W.2d at 272.

■ Missouri has recognized two major exceptions to this general rule. Under the first exception, usually called the "special relationship" exception, Missouri will impose liability if the plaintiff shows that a special relationship existed between the plaintiff and the defendant such that the plaintiff entrusted himself or herself to the protection of the defendant and relied upon the defendant to provide "a place of safety." *Claybon,* 819 S.W.2d at 744; *Faheen,* 734 S.W.2d at 272. Historically, special relationships

have been limited to relationships such as those of common carrier-passenger, school-student, innkeeper-guest, and sometimes employer-employee. *Claybon,* 819 S.W.2d at 744; *Faheen,* 734 S.W.2d at 272. In those situations, the relationship alone may give rise to the duty. *Faheen,* 734 S.W.2d at 272. Plaintiffs do not allege that such a special relationship existed between Mr. Groce and the Festival.

■ The second major exception to the no-duty rule is often referred to as the "special facts and circumstances" exception. That exception can take two forms. First, it is applied where "a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger" and sufficient time exists to prevent injury. *Claybon,* 819 S.W.2d at 745, *citing, Faheen,* 734 S.W.2d at 273. Plaintiffs do not allege that this exception applies here.

■ In the second situation, often referred to as the "violent crimes" exception, a duty is imposed on a landowner for criminal attacks which occur on his or her premises if certain additional elements are present. *Claybon,* 819 S.W.2d at 745; *Faheen,* 734 S.W.2d at 272. First, there must exist some relationship between the plaintiff and the defendant which encourages the plaintiff to come on the premises. *Faheen,* 734 S.W.2d at 272–73. Second, the courts have required "prior specific incidents of violent crimes *on the premises* that are sufficiently numerous and recent to put a defendant on notice, either actual or constructive, that there is a likelihood third persons will endanger the safety of defendant's invitee." *Id.* at 273–74 (emphasis added). *Accord Thiele v. Rieter,* 838 S.W.2d 441, 443 (Mo.App.1992). This means that the mere fact that crimes in general have occurred in an area or that a business is located in a "high crime" area provides an insufficient basis to invoke a duty. *Faheen,* 734 S.W.2d at 273. Finally, the incident causing the injury must be "sufficiently similar in type to the prior specific incidents occurring on the premises that a reasonable person would take precautions to protect his or her invitees against that type of activity." *Id.* at 274.

It is the violent crimes exception which Plaintiffs allege applies in this case. They allege that the required showing of prior violent crimes is met by evidence of other violent incidents at the prior location at which the Festival was held and during the weekend of the Festival in question.

We need not reach this issue, for we find that as a matter of law, Plaintiffs are unable to meet their burden of showing that the attack occurred on premises owned or controlled by the Festival, or over which the Festival otherwise had an obligation to provide security for Mr. Groce. As such, the Festival had no duty to protect Mr. Groce from harm caused by a criminal attack by an unknown third party.

*B.   Liability Is Usually Imposed Only For Attacks On Property Owned Or Controlled By Defendant.*

■ Whether a duty exists is held ultimately to be a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution. *Faheen,* 734 S.W.2d at 273. In evaluating these factors, the Missouri Supreme Court has stated that the "touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Madden,* 758 S.W.2d at 62.

■ In addition, we find that an owner's duty to protect others grows out of the owner's ability to take reasonable steps on the owner's own property to protect others against foreseeable harm from third parties. It is for this reason that the "violent crimes" exception is normally applied only when the attack took place on the owner's premises, for once a person has left the premises of the owner, the owner normally has no greater ability to protect the person from harm than would any other member of our society. *See, e.g., Vann v. Town Topic, Inc.,* 780 S.W.2d 659, 662 (Mo.App.1989) (restaurant owner owed no duty to person injured on public street near restaurant because owner exercised no control over public street and thus

owed no duty to protect injured party from harm on public street).[1]

This principle has been applied in situations quite analogous to the present case. For instance, in *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912, 916 (Mo.App. 1983), a woman was kidnapped and raped while she walked to her car parked on a public street near the tavern she had just left. She argued that the defendant tavern knew she would have to walk through a dangerous area to get to her car and should have warned her or taken other steps to protect her from injury.

In refusing to impose liability, *Wofford* noted that the attack had not occurred at the tavern, but rather on the public street after the plaintiff left the tavern. The assault thus took place off the tavern's premises and outside the area controlled by it. For this reason, *Wofford* concluded that the tavern could not be held liable for plaintiff's injuries, stating:

> to extend the liability of a business to the point that the business would be responsible for crimes on the public thoroughfares in the vicinity of the business would open the floodgates to litigation until almost any crime victim in a commercial area could successfully place his or her case before a jury. It would allow a finding of negligence on the part of a commercial establishment when a crime is committed anywhere in a commercial area. Where would the liability end?

*Id.* at 916.

Similarly, in *Madden*, the Missouri Supreme Court implicitly recognized that a business cannot be liable to persons who were injured on a lot not leased or controlled by the defendant, although it reversed summary judgment because there was a genuine issue of material fact as to whether that defendant did in fact lease or control the area of the attack. 758 S.W.2d at 63. The same kind of result has been reached in every other Missouri case in which a person injured on public property, as a result of the criminal acts of a third party, has sought to hold the owner of a nearby commercial establishment liable for the injuries. *See, e.g., Thiele*, 838 S.W.2d at 443 (man injured by criminal act while crossing public property in order to get to car could not sue tavern he had just left for injuries); *Vann*, 780 S.W.2d at 662 ("where a defendant has no control over the public street, it also owes no duty to business invitees to prevent injuries being inflicted by third persons when the invitees are on the public streets").[2]

## C. Liability May Be Imposed Where Defendant Creates The Risk Of Harm Off Of Its Premises.

Plaintiffs recognize that, if the above cases are found to be applicable, then the Festival cannot be held liable for Mr. Groce's injuries. They argue, however, that Missouri and other states have recognized an exception to the rule that the attack must have occurred on the defendant's premises in those cases in which the defendant created or increased the risk of injury to the plaintiff on property off of, but near, the defendant's premises. In support, they cite to *Fincher v. Murphy*, 825 S.W.2d 890 (Mo.App.1992).

In *Fincher*, the plaintiff was injured when he was attacked by co-defendant Murphy outside a union hall, following a hotly contested union election. The evidence showed that the union officials were well-acquainted with Defendant Murphy, "a large and muscular man, standing six feet one inch in height and weighing 242 pounds." *Id.* at 892. He

---

**1.** The rationale behind requiring control by the defendant of the premises where the attack occurred is well stated in *Barefield v. City of Houston*, 846 S.W.2d 399 (Tex.App.1992), as follows:

> The defendant's duty to provide protection arises from his occupation of the premises. By occupying the premises the defendant has the power of control and expulsion over the third party. If a defendant does not occupy the premises, then he has no potential control or ability to oust a third party. The defendant

therefore, is not liable for his failure to provide security when he does not control the premises upon which a third party assaults a plaintiff. *Id.* at 403 (citations omitted).

**2.** The dissenting opinion in *Vann* noted that, in some cases, an owner may have a duty to provide safe ingress and egress to the property. Mr. Groce does not rely on this doctrine, no doubt because, as noted *infra* at Section D(2), it is inapplicable on these facts.

was known to the union as "a person of turbulent disposition who had been convicted for assault," *id.*, and who had been involved in prior altercations which ended in violence. Furthermore, specific information regarding the election put the union on notice of the possibility of violence—the election was hotly contested, Defendant Murphy had made an implied threat of violence to one of the plaintiffs prior to the election, and the union agent had heard rumors that there might be trouble in connection with the election. *Id.*

Defendant Murphy and others gathered in a turbulent crowd on the street outside the election hall. They awaited the results of the election there because the union hall was closed to them while the results were tabulated. Yet, the union provided no security nor did it request law enforcement assistance. When the plaintiff, who supported Defendant Murphy's election opponent, exited the hall, he was attacked and beaten by Defendant Murphy. He sued Defendant Murphy and the union. *Id.* at 893.

On these facts, *Fincher* found that the union could be held liable despite the fact that the actual attack did not occur on the premises, for there was a sufficient connection between the union's activities and the action which resulted in the injury to impose a duty to take reasonable steps to protect the plaintiff from those on the street adjacent to its union hall, at least for a reasonable period of time. In other words, the election itself was the catalyst for the injury, the injury was foreseeable, and the union could have taken steps to prevent it.

The facts of *Fincher* would bring it within the "special facts" exception concerning intentional infliction of injury by known and identifiable third parties. It is thus distinguishable from the instant case, which involves application of the special facts exception for situations in which prior similar violent crimes have occurred on the business premises.

*Fincher* also seems to come within the exception recognized in cases from other states applied to situations in which it is an affirmative act of the defendant which created an undue risk of harm to the plaintiff. Perhaps most similar to *Fincher* is *Jones v.*

*Oberg*, 52 Or.App. 601, 628 P.2d 773 (1981). In that case, the plaintiff and his friends were drinking in a tavern until about 2:15 a.m., when the defendant tavern owner announced "last call." A rowdy group then tried to buy beer, which the defendant sold them in order to avoid a scene. This group, some of whom were known to the defendant, got into words with other customers. The defendant told the rowdy patrons to leave, and they began to fight in the street. A bartender went outside to break up the fight at the defendant's request. However, some of the rowdy individuals remained in a group across the street.

The plaintiff, unaware of the above occurrences, left the tavern out the front door. He immediately heard loud voices and yelling. He had taken five steps when he was struck in the face and eye by a beer bottle. The plaintiff sued the defendant, alleging the defendant had a duty to protect him from harm. The court agreed, stating that:

> Defendant owed a duty to plaintiff to exercise reasonable care to protect him from injury while he was on defendant's premises. That duty includes not requiring plaintiff to leave the safety of the tavern when there is a foreseeable risk of injury from patrons who have just left.

*Id.* 628 P.2d at 777. *Cf. Weirum v. RKO General, Inc.*, 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36, 41 (1975) (while one is not normally liable for injury to persons occurring off of premises, radio station could be liable for sponsoring contest which affirmatively caused people to speed around town to find radio personality, resulting in injury to the plaintiff).

While we recognize the equity of the rule imposed in these cases, we do not believe they are applicable here. In the instant case, unlike in *Jones* or *Fincher*, there is no evidence that the young man who attacked Mr. Groce had just left the Festival or was connected with Festival events. There is no evidence that he had been acting violently or in a rowdy fashion prior to his attack on Mr. Groce. There is no indication that he was known to Festival operators or that they had previously had any contact with him. To the

contrary, the sole evidence presented was that the perpetrator and his friends were simply sitting on a wall along Main Street, some 800 feet from the point where Mr. Groce had exited the fenced Festival area. While they were all wearing black and gold clothing, there is no evidence they had been engaging in any gang-like activity. Moreover, the Festival organizers had arranged for police to patrol the area outside the fence, and police were in fact manning the barricade near the area in which the assault occurred. Their presence simply did not prevent the assault.

On these facts, we do not believe that *Fincher* and similar cases are applicable. There is no evidence that the Festival affirmatively created or increased the risk to Mr. Groce.

D. *Did The Festival Premises End At The Festival Fence Or Did They Extend To Include The Blocked Off Streets Outside the Fence?*

Plaintiffs alternatively argue that the attack really did occur on Festival premises because the Festival's premises in fact extended beyond the perimeter established by the Festival fence and included the area of Main Street blocked off to traffic. If this argument is accepted, Plaintiffs assert, it means that the attack on Mr. Groce really occurred on Festival premises, and thus that a claim has been stated under traditional principles regarding the duty to protect a business invitee from criminal attacks on one's premises.

In support of their argument, Plaintiffs assert what are, in effect, four "special facts" which support liability: (1) that the Festival's security command post was located outside of the fence; (2) that the Festival organizers knew that those attending the Festival would have to cross over the blocked streets, such as Main Street, to get to their cars or to the buses which would take them to satellite parking; (3) that some of the off-duty police officers hired by the Festival in fact exercised control over security and other matters in the areas outside the fence but inside the blocked-off street area; and (4) that by blocking off Main Street and other streets

located outside of the fenced area, the Festival exercised control over that area.

Plaintiffs conclude that by these acts the Festival effectively extended its premises— that is, the area within its control—to the far edge of the blocked-off streets, and thus past the area of the attack. We disagree.

■ 1. *Location of command post*. As to the location of the security command post, the record is clear that it was in fact run by the police, who kept a single log of security-related events occurring anywhere in the area. Only the two key Festival organizers were actually allowed in the command center itself. Other Festival personnel simply went into the Hospital building for breaks while *not* providing security. Thus, the presence of the command center outside of the fence is not relevant to the duty issue.

2. *Need to cross blocked-off street*. The second "special fact" cited, the fact that the Festival organizers knew that Festival attendees would have to cross Main Street or other areas around the Festival site in order to get to their cars, does not provide a basis to impose a duty.

■ Naturally, attendees at the Festival must park in the area around the Festival itself, just as clients of a business who drive to the business must park on the street or in a parking facility near that business. In all such cases, common sense indicates that clients or invitees will have to cross over the street or parking lot to arrive at their destination. Yet, Missouri has specifically held that a business will *not* be held liable for injuries which occur while an invitee is walking to his or her car after leaving the defendant's premises. *Wofford*, 649 S.W.2d at 916. This rule has been applied even where the plaintiff made the argument, asserted here, that the defendant knew the victim would have to cross the area in which the attack happened to occur in order to reach the plaintiff's car. *Thiele*, 838 S.W.2d at 442 (no liability imposed although plaintiff's decedent left the tavern and was shot and killed "while he was on property which [respondents'] customers were required to cross in order to get to their cars").

Indeed, the only cases which appear to provide for liability for events occurring off the defendant's property are those cases requiring a property owner to "provide a safe means of ingress and egress to his premises for his invitees." *Hanks v. Mount Prospect Park Dist.*, 244 Ill.App.3d 212, 185 Ill.Dec. 1, 5, 614 N.E.2d 135, 139 (1993). These cases do not aid Plaintiffs here, however, for the injury to Mr. Groce did not occur at the entrance to the Festival, but rather many hundred feet away, over a small wall and down Main Street.[3] In any event, Missouri has held that the duty to provide safe ingress and egress does not extend to a duty to provide safe passage in the area between the business and the location where the plaintiff's car was parked. *Thiele*, 838 S.W.2d at 443–44; *Wofford*, 649 S.W.2d at 914.

**3. *Control of security outside fence.***
The third "special fact" relied on by Plaintiffs is the allegation that the Festival controlled security outside the fenced area, at least in part. In effect, Plaintiffs are arguing that by voluntarily providing some security outside the fence, the Festival voluntarily assumed a duty to protect invitees from the criminal attacks of third persons outside the fence, and can be held liable for failing to fulfill its duty.

Missouri has recognized that, in certain circumstances, a person may be held liable for negligent performance of a voluntary undertaking to protect invitees from criminal attack. *Keenan*, 784 S.W.2d at 303. In *Keenan*, the plaintiff expressed fear about going to the rear of defendant's premises to donate some gifts to charity. The defendant affirmatively assured the plaintiff that its employees would always be with her and she would be safe. The employees left the plaintiff alone outside at the back of the building, and she was attacked and injured. The owner was held liable due to its assurances of

safety and the plaintiff's reliance on them. *Id.* *See also Claybon*, 819 S.W.2d at 747.

In the instant case, however, there is no evidence that the Festival organizers made assurances of safety to Mr. Groce, or that he relied on such assurances. In fact, quite the opposite is true. It is uncontroverted that Mr. Groce never talked to any Festival operators except perhaps to purchase food or drink. In addition, Festival personnel were not patrolling the area where Mr. Groce exited the fence, nor were they present in the blocked-off area of Main Street where the attack occurred. Therefore, unlike in *Keenan*, the Festival organizers did not cause Mr. Groce to rely on them for safety.

Secondly, we disagree with Plaintiffs that there is evidence that the Festival organizers undertook a duty similar to that in *Keenan* to provide security in the area around the perimeter of the fence. Mr. Smith testified at his deposition that the Festival itself only provided security within the fences around the Festival grounds. That security was provided both by off-duty police and by private security personnel hired by the Festival organizers. Outside the fence perimeter, security was to be provided solely by on-duty Kansas City, Missouri police officers. No security was planned to be provided outside the fences by persons employed by the Festival.[4]

Plaintiffs present evidence from the police log that on at least two occasions off-duty police officers hired by the Festival did respond to occurrences which took place outside the fences. They say this raises a question of fact as to whether the Festival exercised actual control of security over the property which lay outside the Festival fences. There is nothing to indicate that the Festival had an obligation to respond to these events, that it authorized the two off-duty officers to do so, or that they responded in their capacity as Festival security rath-

---

3. Moreover, the "safe ingress and egress" rule is limited to situations in which there is a physical defect in the property over which the invitee must cross, so that he cannot cross safely. *Hanks*, 185 Ill.Dec. at 5, 614 N.E.2d at 139. This rule has been held not to apply to the situation where a child had to cross a dangerous street to get to defendant's playground. *Id.*

4. The Festival did fence off a sculpture located on the grounds of a nearby building in order to help protect it from damage by the crowds passing by that area. That was a separate, private arrangement with the owners of that building, however, and the injury to Mr. Groce had nothing to do with the sculpture area.

er than as off-duty police officers, however. In these circumstances, the mere fact that on two occasions an off-duty police officer may have, on his or her own volition, assisted in response to an occurrence outside the fence does not provide a basis for liability. The Festival organizers apparently did not ask for or authorize such conduct, nor did they assume responsibility for the area outside the fence in any contract with the city. Their agreement with the city was that they would provide security inside the fenced area, and the police would do so outside the fenced area, including on the blocked area of Main Street.[5]

Even were there evidence that the Festival was supplementing police security outside the fenced area, however, there is a third and dispositive reason why *Keenan* does not apply. In *Keenan*, the attack occurred *on the premises* of the defendant and it was only at the back of the defendant's premises that the defendant had promised but failed to provide security personnel. The comparable situation here would be if Mr. Groce were attacked inside the fenced area after relying on the presence of Festival security personnel.

That is not what occurred, however. Here, Mr. Groce was injured outside the fenced area. Plaintiffs would have us infer control and liability merely from the sporadic response of the off-duty officers in that outside area. A similar extension of *Keenan* was specifically rejected in *Thiele*, 838 S.W.2d at 444. Plaintiff in *Thiele* argued that a tavern owner could be held liable for injuries occurring off of his property where he had hired off-duty police officers to patrol the area outside his tavern because of concern about crime in the area, but the plaintiff's decedent was nonetheless shot and killed. In so holding, *Thiele* stated:

> In *Keenan*, express assurances of safety were given. Here, no such assurances were made. Further, there are no allegations that appellant relied on the presence of the uniformed police officer for his protection. In addition, we note that in *Keenan*, the assault occurred on the defendant's

property. To grant appellant her position in this case, is to hold that a property owner could assume a duty to protect an invitee, not only on his own property, but also on property belonging to a third party or even property belonging to the State—even if the defendant has absolutely no control whatsoever over that property. We believe that such a decision, if it is ever to be made, is better left to the legislature and not to the courts.

*Id.* at 444.

■ Thus, *Thiele* rejected an argument, like that made by Plaintiffs, that the mere voluntary provision of some security *outside* of one's premises is a sufficient basis on which to impose liability for a criminal attack off the premises, at least in the absence of reliance or express assurances of the plaintiff's safety. In accordance with *Thiele*, we hold that the mere provision of some security does not make an area part of one's premises or otherwise in itself provide a basis for finding that the defendant controlled the area patrolled so that the defendant can be held liable for third-party criminal attacks in that area.

**4. *Blocking off the street.*** The final "special fact" relied on by Plaintiffs is the fact that the Festival requested the police to block off Main Street (and certain other streets in the area) to vehicular traffic. They argue that, by so blocking the streets, the Festival exercised control over the blocked-off area and thus may be held liable for its very failure to provide security, or adequate security, in the area it blocked off. Plaintiffs have cited no authority which directly supports this argument, however, and our own research has found no case, in Missouri or elsewhere, which holds a defendant liable for an attack occurring off of his or her actual premises because the defendant exercised control over a public area, such as a street or sidewalk, by blocking it.

The most analogous cases our research has disclosed are those addressing liability of a property owner for personal injuries incurred

---

**5.** The Festival organizers did say that they would not interfere if one of the off-duty police officers responded because the officer believed it was his

or her duty to do so as a police officer, even if off duty.

just outside the defendant's premises, but on land over which the defendant exercised certain control. In most of these cases, a private landowner or a business has placed a driveway or some object or opening on the sidewalk or road adjacent to its building, thereby partially blocking or obstructing the public way. The courts have held that if, in so doing, "through negligence or affirmative action," the condition the landowner thus artificially created makes the area unsafe for those passing, he or she can be held liable for resulting injuries. *See Rauh v. Interco, Inc.,* 702 S.W.2d 497, 500–01 (Mo.App.1985). *See also Martin v. Gilmore,* 358 S.W.2d 462, 464 (Mo.App.1962) ("abutting property owner who makes a special use of the sidewalk is under a duty to exercise reasonable care to maintain that part put to his special use in a reasonably safe condition for use by the public"). This is but another application of the rule discussed above that, where a landowner's affirmative act creates a danger, the owner may be held liable for injuries resulting from the risk created.

This rule was applied in *Hart v. City of Butler,* 393 S.W.2d 568, 582–83 (Mo.1965), in which plaintiff-pedestrian was injured when she fell over a length of pipe left laying on the sidewalk in front of the defendant's business. The evidence showed that the defendant had placed three iron grates in the sidewalk in front of its building so as to furnish light and ventilation to its basement. The grates extended over two of the five feet of the sidewalk's width. A pipe, of the same rusty color as the grating, was laying across part of the grating and extended out about one foot past it. The evidence indicated that the pipe did not belong to the defendant, but rather had been left by some other person. It had been seen at various places on the sidewalk for some years and apparently no one had taken the trouble to pick it up. There was no evidence as to who moved it over the grate.

*Hart* noted the principle that:

an abutting property owner who makes a special use of the sidewalk is under a duty to exercise reasonable care to maintain that part put to his special use in a reasonably safe condition for use by the public. 393 S.W.2d at 582. *Hart* went on to note that "the special use carries with it the duty not to permit the use to create conditions unsafe for the passing thereon of pedestrians." *Id.*

The plaintiff alleged that the duty to maintain the grating in a safe condition included the duty to keep it free of obstructions such as the pipe. The Court disagreed. It held that the duty to maintain the safety of a public sidewalk rests on the municipality, and not on the property owner, "unless the abutting owner by his affirmative act or negligent omission creates, or causes its use to create, a dangerous condition." *Hart,* 393 S.W.2d at 583. While the abutting owner had created the grate, the grate did not cause the injury; that was caused by the pipe. The mere fact that the pipe happened to be located in the area where the grate was placed was thus irrelevant to liability.[6]

This principle is directly applicable here. The city did block Main Street at the request of the Festival (although the Festival indicates that it in turn was asked by the police to request the blockage). For present purposes, we will assume, without deciding, that the Festival could be held liable if an injury occurred because of the blockage of the street itself—for instance, someone tripped over the concrete blocks, or the blocks fell on someone, or they prevented emergency vehicles from reaching injured persons.

Here, however, the blockage of the street did not affirmatively cause the injuries. The attack simply happened to occur in the blocked-off area, much as the pipe in *Hart* happened to be located over the grate. There is no indication that the attacker had any connection to the Festival or that the Festival controlled security in that area. There is no evidence that the Festival even

---

6. *See also Lange v. Wehrenberg Theaters, Inc.,* 870 S.W.2d 880, 882–83 (Mo.App.1993)(abutting landowner liable if they artificially create unsafe condition or if they put sidewalk to special use and this creates risk of danger which injures plaintiff); *Harris v. Woolworth,* 824 S.W.2d 31, 33 (Mo.App.1991)(accord); *Stein v. Mansion House Ctr.,* 647 S.W.2d 918, 919 (Mo.App.1983)(accord).

had the authority to control who gathered inside the blocked area of Main Street. To the contrary, the only evidence is that the street was still a public way and was open to all pedestrian traffic—it was only vehicles which were blocked from entering. Further, the group of young men the attacker was with were gathered on a wall along the sidewalk prior to the attack. They could have so gathered regardless whether Main Street was blocked off from vehicular traffic. The blockage of the street simply was not the proximate cause of the injuries.

## III. *CONCLUSION*

For all of these reasons, we find that as a matter of law Plaintiffs are unable to prove that Defendant Festival owed a duty to Mr. Groce, and hence we affirm the trial court's grant of summary judgment to Defendant.

All concur.