

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| DEBBIE M. EARLEY, | ) | No. ED110514 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 18JE-CC00453 |
| | ) | |
| MARY V. DUNN, | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Respondent. | ) | Filed: March 21, 2023 |

## I.      Introduction

This appeal concerns the question of whether an employer owes a duty to protect its employees from the criminal acts of third parties solely by nature of the employer-employee relationship. Debbie Earley was sexually assaulted by Mary Dunn's grandson while working as an in-home caregiver in Dunn's home. Earley sued Dunn for negligence, arguing that Dunn, as Earley's employer, had a duty to protect her from the assault. The circuit court granted summary judgment in favor of Dunn, ruling that Dunn had no such duty.

Though several Missouri opinions have stated that an employer-employee relationship can "sometimes" give rise to a duty to protect employees from the criminal actions of a third party, the opinions provide no guidance on when the duty arises.[1] Moreover, and perhaps more importantly,

---

[1] There is relatively little authority in this area. This is likely a result of the exclusive remedy provided by Missouri's Workers' Compensation Law. In the vast majority of cases, an employee's claims against an employer for an on-the-

none of the opinions conducted any analysis of whether the employer-employee relationship is the type of special relationship that gives rise to a duty to protect someone from the criminal acts of a third party. Earley has not identified a single case from this jurisdiction, or any other, in which an employer was actually held to have a duty to protect its employees from the type of unforeseeable injury that occurred in this case.

Because we find that the circumstances of this case did not give rise to a duty to protect Earley from third-party criminal acts, we affirm the circuit court's judgment.

## II.     Factual and Procedural Background

In 2008, Dunn suffered a stroke that left her unable to care for herself. Dunn's daughter, Irene Laiben, sought to hire someone to provide her mother with in-home care. In this capacity, Laiben hired Earley to care for Dunn. Laiben handled most of the administrative work associated with Dunn's employment, including creating a schedule and distributing paychecks. All payments came from Dunn's accounts. Earley's duties included managing Dunn's medications, taking her to appointments, and assisting her with bathing and dressing. As part of her responsibilities, Earley cared for Dunn overnight and slept in Dunn's home.

One evening, while sleeping in Dunn's home, Earley awoke to Dunn's grandson, Tyler Young, knocking on the front door. Young was intoxicated, but Earley allowed him inside, believing she had no ability to refuse. After Earley returned to her room, Young entered and sexually assaulted her. Dunn was asleep at the time and unaware of Young's presence. Earley sued Dunn for negligence, alleging that Dunn violated her duty to protect Earley from Young's criminal acts. Earley argued that Dunn was her employer and their relationship gave rise to Dunn's duty.

---

job injury are handled via the workers' compensation system, which serves as the exclusive remedy. Because this case falls within the exceedingly narrow circumstances in which workers' compensation insurance was neither required nor purchased, the Workers' Compensation Law does not apply.

The circuit court entered summary judgment for Dunn. Specifically, the circuit court found that Dunn had no duty to protect Earley from criminal acts of third parties and stated that not every employer-employee relationship is a "special relationship." This appeal follows.

### III. Standard of Review

This Court reviews the grant of summary judgment de novo. *ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6) (2021). We review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Missouri Highway & Trans. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998).

A defendant may establish a right to summary judgment by demonstrating (1) facts negating any one of the elements of the plaintiff's claim; (2) that the plaintiff, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the plaintiff's claim; or (3) that there is no genuine dispute as to the existence of the facts necessary to support the defendant's properly pleaded affirmative defense. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011).

### IV. Discussion

As part of an action for negligence, a plaintiff must establish that the defendant owed the plaintiff a duty of care. *Wieland v. Owner-Operator Services, Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018). Whether a duty exists is purely a question of law. *Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. banc 1988). "The touchstone for the creation of a duty is foreseeability." *Wieland*, 540

3

S.W.3d at 848 (quoting *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Company, L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002)). For this reason, the general rule is that there is no duty to protect against the criminal acts of third parties because such events are rarely foreseeable. *Id.*

An exception to this general rule arises when either a "special relationship" or "special facts and circumstances" exist, such that "an act or omission exposes someone to an unreasonable risk of harm through the conduct of another." *Keenan v. Miriam Foundation*, 784 S.W.2d 298, 302 (Mo. App. E.D. 1990). This case involves only the question of a special relationship. Special relationships "include those in which a party entrusts himself to the protection of another and relies upon that person to provide a place of safety." *Id.* Under this exception, the relationship alone gives rise to the duty. *Faheen, By & Through Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. App. E.D. 1987).

On appeal, Earley argues that Dunn had a duty to protect Earley from the third-party criminal assault by Young because the employer-employee relationship is a special relationship.[2] In support, Earley cites numerous cases in which this Court included the employer-employee relationship in a list of other special relationships. That list is typically stated as follows: "Such relationships are usually delineated as those of innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee." *Meadows v. Friedmann R.R. Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo. App. E.D. 1983) (citing *Virginia D. v. Madesco Investment Corp.*, 648 S.W.2d 881 (Mo. banc 1983) and *Goldberg v. Housing Authority of Newark*, 38 N.J. 578 (1962)).

Initially, we have found no Missouri case holding that the employer-employee relationship should be considered a special relationship justifying departure from the general "no duty" rule.

---

[2] The parties dispute whether Dunn was Earley's employer. Because we conclude that Dunn owed no duty even if she was Earley's employer, we do not address this issue.

There exists no case law in this jurisdiction in which a court conducted an analysis on the issue. We have also been unable to locate any cases in which our courts have actually applied the special relationship exception to an employer.[3] Instead, the concept appears to have come into our jurisprudence simply by being included, without elaboration, in a list of the types of relationships that can fit within the special relationship exception.

This list of relationships was first set out in *Meadows v. Friedmann R.R. Salvage Warehouse*. 655 S.W.2d at 721. In *Meadows*, one of the plaintiffs was shot and injured while on the defendant's premises as a customer. *Id*. at 720. *Meadows*, therefore, involved the question of whether a business had a duty to protect its invitees from third-party criminal actions. *See id*. This Court held that there was no special relationship between a business and its invitees. *Id.* During its discussion, the Court did not conduct any analysis of the employer-employee relationship or mention the concept beyond including it in the list. As a result, the statement in *Meadows* that an employer-employee relationship can "sometimes" be a special relationship was unnecessary to the holding and is dictum. *See Byrne & Jones Enterprises, Inc. v. Monroe City R-1 Sch. Dist.*, 493 S.W.3d 847, 855 (Mo. banc 2016) ("Judicial decisions 'must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision.").

*Meadows*'s inclusion of the employer-employee relationship in the list of special relationships was also unsupported by the two cases it relied on for the proposition. The first of those cases was *Virginia D. v. Madesco Investment Corp.*, in which a plaintiff sued a hotel for

---

[3] We have, however, identified authority from other jurisdictions holding that the employer-employee relationship is *not* a special relationship. *See, e.g.*, *Dupont v. Aavid Thermal Techs., Inc.*, 798 A.2d 587, 590 (N.H. 2002) ("We decline to hold that the employment relationship is the type of 'special' relationship that gives rise to a duty to protect against foreseeable criminal attacks by third parties.").

negligence after she was sexually assaulted in one of the hotel's bathrooms. 648 S.W.2d at 883. In reversing the judgment in favor of the hotel, the Court discussed the innkeeper-guest and common carrier-passenger relationships, but it did not discuss or mention the employer-employee relationship. *Id*. at 886-89.

The second case *Meadows* relied on was the New Jersey case of *Goldberg v. Housing Authority of Newark*. *Goldberg* involved a delivery person that sued the owner of a housing project after being assaulted on the property. 38 N.J. at 579. The plaintiff argued that the property owner, a public entity, had a duty to provide police protection at the property. *Id.* at 580. The case did not involve the question of whether an employer owed its employee a duty to protect from third-party criminal acts and provided little substantive discussion of the issue.

*Goldberg* did, however, include a discussion of *Lillie v. Thompson*, in which the United States Supreme Court reversed the dismissal of a claim under the Federal Employers' Liability Act. 332 U.S. 459, 460 (1947). In *Lillie*, the petitioner claimed that she was injured as a result of her employer's negligence "in sending her to work in a place he knew to be unsafe without taking reasonable measures to protect her." *Id*. The petitioner worked the night shift alone in an isolated part of her employer's railroad yards. *Id*. Her duties were to receive and deliver messages to employees operating the trains. *Id*. at 461. In order to receive their messages, the employees would knock on the door and the petitioner would admit them. *Id*. The building had no windows, and the petitioner was required to open the door to identify the person seeking entry. *Id*. One night, after responding to a knock at the door, the petitioner was attacked by a non-employee and suffered serious injuries. *Id*. The petitioner alleged that her employer "had reason to know that the yards were frequented by dangerous characters," but "failed to exercise reasonable care to light the building and its surroundings or to guard or patrol it in any way." *Id*. at 460-61. The Court found

6

that the petitioner sufficiently alleged that her employer had a duty. *Id*. at 461. The duty arose because the employer "was aware of conditions which created a likelihood that a young woman performing the duties required of petitioner would suffer just such an injury as was in fact inflicted upon her." *Id*. at 461-62. In other words, the employer's duty arose from his knowledge of the risk—not from a special relationship with the employee. *See id*. at 462 n.4.

The New Jersey court in *Goldberg* distinguished *Lillie* from the criminal attack involving the delivery person. *Goldberg* noted that *Lillie* relied heavily on the facts and circumstances known to the employer at the time of the attack against its employee. 38 N.J. at 585-86. *Goldberg* distinguished this from the circumstances of the delivery person, in which such knowledge of danger was not attributed to the property owner. *Id.* at 585-92. Notably for our purposes, *Goldberg* did not hold, and did not discuss, whether an employer-employee relationship creates a duty, in and of itself, to protect employees from criminal acts of third parties.

Nevertheless, following *Meadows*, this Court has continued to state in its opinions that the employer-employee relationship is "sometimes" a special relationship. Yet, none of those cases have actually applied the exception to this relationship. In fact, the case that came the closest to discussing the issue ultimately determined that the exception did not apply. In *Claybon v. Midwest Petroleum Co.*, a third party shot and killed Reginald Claybon while Claybon was at the defendant's service station applying for a job. 819 S.W.2d 742, 744 (Mo. App. E.D. 1991). Claybon's mother sued the service station for wrongful death, arguing that the defendant had a duty to protect Claybon from the third party's criminal acts. *Id.* This Court rejected that argument, finding no special relationship existed between the defendant and Claybon. *Id*. at 745-47. This Court held that neither party alleged or admitted that Claybon was an employee and that, even if he was an employee, he was on the premises as a member of the general public when he was

injured. *Id*. at 745. *Claybon* did not analyze whether the employer-employee relationship should be considered a special relationship, it simply cited the list of relationships first set forth in *Meadows* and found that the relationship had not been established. *See id*. at 744-45.

From these cases, it is apparent that the employer-employee relationship has never truly been recognized as a special relationship in Missouri so as to impose a duty to protect employees from the criminal actions of third parties. Earley has provided no independent argument for the inclusion of the employer-employee relationship in this exception, instead, choosing to rely on the multiple repetitions of the *Meadows* dictum. But repetition of dictum does not make law, and Dunn's relationship with Earley did not create a duty to protect against the assault by Young.

This does not mean, however, that an employer can never owe a duty to protect its employees from third-party criminal acts. Take, for example, *Lillie v. Thompson*, discussed above, in which the Supreme Court found that a plaintiff adequately pleaded that her employer owed her a duty based on the facts and circumstances of the case. It is notable that this case was not based on the employer-employee relationship, but instead required a finding that the employer "was aware of conditions which created a likelihood" that the circumstances of the employment created a particularized danger that the employee "would suffer just such an injury as was in fact inflicted upon her." 332 U.S. at 461-62.

This bears a striking resemblance to the duties a business owner owes to its invitees as recently discussed by the Supreme Court of Missouri in *Wieland v. Owner-Operator Services, Inc.* A business owner, like an employer, typically owes no duty to protect its invitees from third-party criminal acts. *Wieland*, 540 S.W.3d at 848. There are two exceptions to this rule: 1) "when the defendant knows, or has reason to know, that a third party is harming or is about to harm an entrant," and 2) "when the nature of the defendant's business or past experience provides a basis

for the reasonable anticipation on defendant's part that the criminal activity of third persons might put entrants at risk." *Id.* at 848-49 (quoting The Law of Premises Liability § 11.03[1], 11-6). We conclude that this same standard applies as the benchmark for measuring when an employer owes its employee a duty to protect against the criminal acts of third parties.

Earley has not argued in this Court that the facts and circumstances of her employment gave rise to a duty or that Dunn had any knowledge of any danger of a criminal attack being perpetrated against Earley. Even so, in reviewing the summary judgment record in the light most favorable to Earley, we find no duty arose. Earley admits that Young had never arrived at Dunn's house intoxicated in the early morning hours before and that Young did not have a prior criminal history outside of traffic violations. Earley does not allege here that Dunn had knowledge of any other circumstances that would put Earley at risk of a criminal attack while on the job. Therefore, Dunn had no duty to protect Earley from the unforeseeable attack by Young.

Finally, we note that Earley also argued that under Missouri law, Dunn, as her employer, owed her certain nondelegable duties, including the following: (1) to provide a safe place to work; (2) to provide safe appliances, tools, and equipment for work; (3) to give warning of dangers of which the employee might reasonably be expected to remain in ignorance; (4) to provide a sufficient number of suitable fellow servants; and (5) to promulgate and enforce rules for the conduct of employees which would make the work safe. *See Peters v. Wady Industries, Inc.*, 489 S.W.3d 784, 795 (Mo. banc 2016).[4] However, Early has provided no authority demonstrating that these duties have ever been held to include a duty to protect the employee from third-party criminal acts unless the employer had knowledge of such a danger.

---

[4] As discussed in depth in the *Peters* opinion, Missouri's Workers' Compensation Law provides a "no-fault system of compensation" that was intended to replace common law actions for work-related injuries. 489 S.W.3d at 791. As a result, the question of whether an employer has breached these duties is not commonly litigated.

## V.      Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

_____
John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.