**WHITNEY et al. v. TUTTLE.**

No. 26162.   Nov. 10, 1936.

E. B. McMahan, for plaintiffs in error.

O. S. Shaw, Hughes & Dickson, and Rizley & Sweet, for defendant in error.

BAYLESS, J. This is an appeal from the district court of Cimarron county, Okla., from a judgment, based on the verdicts of a jury, in favor of Fred Tuttle, plaintiff, against Seymour Whitney and V. O. McCoy, defendants.

The action was instituted against the defendants and George Harmon, a justice of the peace, but the action was dismissed as to the latter.

The allegations of the petition were that these named defendants conspired to bring about the arrest of plaintiff on a "trumped up" charge, and to cause him to be convicted thereof, and to be humiliated, etc., and that Whitney and McCoy, officers of the law, in arresting him beat and assaulted him and incarcerated him by virtue of an illegal process, and then damages were alleged. The defenses of the officers were general denials.

The evidence discloses a most loose and irregular method of arrest and trial. Officer Whitney, whose authority was from the city, observed plaintiff parking his automobile, and sitting in it, in violation of a city ordinance. The officer motioned to plaintiff with his hand to move on. Plaintiff says he mistook the motion as a greeting and answered. Whitney returned in a few minutes and saw plaintiff had not moved. He thereupon directed him to appear before the magistrate, Harmon, at a certain time for trial. Harmon testified he was justice of the peace for Boise City. Plaintiff appeared at the specified time and was informed orally of the charge and was offered time to defend, but pleaded guilty and asked for as light a fine as possible. When he was told the amount of the fine he promised to return with the money, and left. He then consulted his lawyer and was advised the proceedings were illegal and to ignore the matter. This he did, but practical jokers would telephone him, and, impersonating the magistrate or the officers, would demand payment. Finally Harmon telephoned about the unpaid fine, and plaintiff, thinking he was a joker, told him he was at some other point and invited him to come there to get the money. When Harmon got there and found his trip was fruitless, he returned to his office and issued a commitment. This was a form used in state criminal matters by justices exercising their usual power. When Whitney presented this to plaintiff, plaintiff ignored its commands and informed Whitney that, on advice of his lawyer, he believed the proceedings invalid and he did not intend to submit to arrest. Whitney thereupon left and returned in a few minutes with McCoy to aid him. When plaintiff again orally and physically resisted, the officers used their pistols to club him about the head until his resistance was overcome. His incarceration followed, whereupon friends paid the fine, procured his release, and took him to the hospital.

The assignments of error fall into five groups, viz.: rulings on preliminary pleadings, the court's action in construing the petition and defining the issues, failure of evidence, erroneous instructions, and errors of law relating to the verdict of the jury.

A reading of the petition discloses that the notion of a conspiracy against the plaintiff was uppermost in his mind. The various actions toward him were alleged to be in pursuance thereof. Yet he admitted on cross-examination he had no knowledge of any acts or conversations between the defendants as to doing ill will or injury to him. The question then is: Was plaintiff entitled to trial on the issues presented by his petition? The actions charged to the officers were actionable, irrespective of conspiracy. Such a conspiracy would have furnished grounds for punitive damages. The petition is not in the best form, and it would have been the better practice to have ordered plaintiff to recast it in order that on the subsequent failure of proof on any one cause, the others would not be affected. Whatever error was thus committed was perpetuated when the court instructed the jury on the issues, including conspiracy, when plaintiff had said in so many words he had no proof of conversations or acts between Harmon, Whitney, and McCoy indicating joint ill will toward plaintiff or a desire to injure him. No exception to this instruction was taken by defendants. Defendants did except to the giving of plaintiff's requested instruction No. 1, defining conspiracy, but do not assign this as error, and it must be considered waived. The defendant officers did not demur to the evidence or otherwise attack plaintiff's right to go to the jury. Under such a record we are unwilling to reverse for an error which in our opinion was not prejudicial. We believe the jury understood that they were weighing the liability of these officers for a bodily assault. The jury was instructed to determine whether excessive force was used. Their verdicts indicate the jury thought so.

We think so, and believe the jury's verdicts were extremely moderate in view of the pistol whipping these officers inflicted upon plaintiff. It is clear plaintiff was unarmed, did not offer them violence, and did not offer such physical resistance as could not be overcome by two men without resort to rendering plaintiff insensible. Such error is harmless.

We will discuss assignment 2, relating to the petition and the issues submitted to the jury thereon, and No. 4, relating to instructions given and refused.

What we have said disposes of assignment 3, and the complaints regarding paragraph 3 of instruction No. 1, and the refusal to give requested instruction No. 1.

Regarding the refusal to give requested instruction No. 3, there is no error, for the court gave an instruction, certain parts of No. 1, which adequately covered the issue of the amount of force proper to use.

Relating to the assignment of the insufficiency of the evidence, no demurrer to the evidence was offered, and we will not consider the assignment.

The last assignment concerns the verdicts of the jury. The jury returned two verdicts in writing, one against Whitney for $300, and another against McCoy for $200. The defendants objected to receiving said verdicts and made their record thereon.

The general rule is that a jury cannot apportion damages between the joint tort-feasors. 64 C. J. 1084, sec. 887; 27 R. C. L. 893, sec. 66; Hall v. McClure, 112 Kan. 752, 212 P. 875, 30 A. L. R. 782, and annotation beginning at 790. This is the rule in Oklahoma. Central Pet. Co. v. Lewis, 98 Okla. 26, 224 P. 186; and Cain v. Quannah Light & Power Co., 131 Okla. 25, 267 P. 641.

The authorities are unanimous that such a verdict should be sent back for amendment or correction by the jury. The trial court should have done so in this case, but did not, and we now come to the aspect of the matter about which there is some difference of opinion and procedure. What must be done with such verdicts?

Very few states hold them absolutely void. Most jurisdictions adopt rules which avoid the necessity of reversal and retrial, and we believe this is the better practice.

This case is the only one coming to our attention in which separate writings by the jury were received. Most of the cases of the latter group involve verdicts in which the juries found a lump sum, and then added instructions regarding apportionment. These instrictions are treated as surplusage and ignored, and a verdict is entered against all for the lump sum. In yet other cases the juries returned a single writing wherein they would find against A for $500, B, $300, and C, $200. Among such cases there is a difference of treatment. Some attempt to interpret the verdict as meaning a lump sum of $1,000 against all, others reject this and allow (a) the plaintiff to select one defendant against whom the judgment is to stand and remit as to all others, or (b) take judgment against all for "the better damages."

We cannot adopt the lump sum theory or "the better damages" theory in this case, for the first would allow a judgment against both for $500, a larger sum than the jury's separate verdict against either, and the second would prejudice McCoy by raising his verdict from $200 to $300, a judgment we cannot say the jury intended.

We can with propriety and logic allow the verdict of McCoy to stand and reduce the verdict of Whitney to $200, and allow plaintiff a joint and several judgment against the two for $200, or we can with as much propriety and logic allow the plaintiff his choice of verdicts with a remittitur as to the other.

Therefore, the plaintiff is given 15 days in which to file a remittitur, in which he (1) accepts one or other of the individual judgments and remits the other; or (2) enters a remittitur on the larger judgment to equalize it with the smaller, and thereby receive a joint judgment against both defendants for the same amount and costs, and, upon the failure of the plaintiff so to do, the judgment will be reversed and remanded for a new trial.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and WELCH, JJ., absent.