Donald R. **FINCHER** and James M. **Dyke**, Jr., Respondents,

v.

James **MURPHY**, et al., Appellants.

No. WD 43954.

Missouri Court of Appeals, Western District.

Jan. 28, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1992.

Application to Transfer Denied April 21, 1992.

Erwin Lance Milne, John W. Ellinger, Jefferson City, for appellants.

Mark Alan Ludwig, Jefferson City, Bradley S. Dede, Clayton, for respondents.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

KENNEDY, Judge.

This is an appeal by defendant James Murphy and defendant Laborers Local No. 662 from judgments against them for damages for personal injuries suffered by plaintiffs Donald R. Fincher and James M. Dyke, Jr.

Plaintiffs Donald Fincher and James Dyke were injured in an assault upon them by defendant James Murphy. The assault occurred between 1:00 and 2:00 a.m. on June 15, 1986, in the wake of a hotly contested union local election. It took place on a Jefferson City public street outside the building which housed the union headquarters where the union members' votes were cast and tabulated. Defendant James Murphy was defeated in his bid for reelection as president of the local. Fincher and Dyke were supporters of Murphy's opponent for the office.

The jury returned a verdict for plaintiff Fincher against individual defendant Murphy for $9,600 actual damages and $20,000 punitive damages. They returned a verdict for plaintiff Dyke against individual defendant Murphy for $2,750 actual damages and $5,000 punitive damages. Defendant Murphy has appealed from judgments entered upon the verdicts.

The jury also returned verdicts against Laborers Local No. 662 in favor of Fincher for $100,000 damages, and in favor of Dyke

for $25,000. Dyke's judgment on the verdict was reduced by five percent fault assessed to Dyke. The local has appealed to this court.

## Union's Appeal

■ The first question is whether plaintiffs made a submissible case against the union local. The union claims they did not.

Plaintiffs' theory was that the union knew, or by using ordinary care should have known, there was a likelihood of violence during and after the election and it failed to use ordinary care to prevent the violence.

The evidence tending to support the plaintiffs' theory, and tending, therefore, to support the verdict, is as follows:

The union local election was held June 14, 1986. The polling place was the basement of the union headquarters building, which was located at 209 Flora Drive in Jefferson City. At the time of the election, Flora Drive was a dead-end street. Throughout the day, union members congregated in the street in front of the building. The polls closed at 7:00 p.m. Between 9:00 and 10:00 p.m., two union members got into a verbal altercation at the edge of the street, "right at our property line." Union business agent Kenny Moreau, the union's chief executive officer, intervened. One of the combatants pushed Moreau. Plaintiff Fincher intervened and helped Moreau restore order. The counting of the ballots was completed between 1:00 a.m. and 2:00 a.m. on June 15. Throughout the evening, after the polls closed, union members congregated outside the building. Murphy and his supporters were encamped "up the hill" from the union building, while the other camp—which included Dyke and Fincher—congregated on the other side of the building. There was drinking going on, especially among Murphy's group. Murphy had bought a keg of beer after the polls had closed at 7:00. Moreau sent some people home, but he testified he had no authority to send people off the public street.

Business agent Kenny Moreau acknowledged the election was hotly contested, with former friends and allies opposing each other, and that tempers were high as the election approached. Murphy had been assistant business agent of the union local, and he had been discharged by Moreau a year before the election.

It has often been held that the proprietor of an activity where a number of people are wont to congregate is under a duty to take reasonable precautions to prevent reasonably foreseeable harm to patrons from assaults or horseplay, or in some cases even negligent acts, by third persons. *Gold v. Heath*, 392 S.W.2d 298 (Mo.1965); *Murphy v. Winter Garden & Ice Co.*, 280 S.W. 444 (Mo.App.1926); Restatement (Second) of Torts § 344 (1965).

We are unable to hold that defendant union, as a matter of law, was free of negligence in taking no precautions to prevent such an assault as defendant Murphy's assault upon plaintiffs Dyke and Fincher. From the evidence most favorable to the verdict, the jury could believe that violence was foreseeable. Defendant Murphy was candidate for re-election as president of the local. The election was hotly contested, and defendant Murphy lost to his opponent by a vote of 158 to 153. As the election approached, plaintiff James Dyke told the union secretary and Moreau, the business agent, about an implied threat of violence made to Dyke by Murphy when Dyke had rejected Murphy's solicitation of support in the election. Murphy was a large and muscular man, standing six feet one inch in height and weighing 242 pounds. Moreau had heard rumors there might be trouble in connection with the election. Tempers were high. Defendant Murphy had been involved in prior altercations which ended in violence. One such altercation took place in the presence of several union members. He was known to Moreau as a person of turbulent disposition who had been convicted for assault.

After the polls closed at 7:00 p.m., several members of the union lingered about the premises through the evening, awaiting the result of the election. Moreau estimated there were 50 people awaiting the election results. As earlier noted, there was a good

deal of drinking. Defendant Murphy had furnished a keg of beer after the polls closed. The Murphy group became loud and boisterous.

After the counting of the ballots was completed between 1:00 a.m. and 2 a.m., Moreau was on his way from the basement, where the election was held and where the ballots had been counted, to post the results on the front window of the office. The union members, in their eagerness to know the result, literally tore the report from Moreau's hands before he could post it.

Plaintiff Dyke got into his truck to leave the premises. He backed up along the street to report the election results to some of the other union members who were gathered. He was standing outside his truck when defendant Murphy approached, called Dyke several insulting names, and attacked him savagely. Dyke was a much smaller man than Murphy. Fincher attempted to restrain Murphy, and for his efforts was beaten himself. Others of Murphy's group joined the melee. Both Dyke and Fincher were seriously injured. Moreau intervened, retreating when Murphy's supporter produced a knife.

This evidence was sufficient to show prima facie that the union, through business agent Moreau, was on notice of the distinct possibility of violence during or in the wake of the election. It would have been possible to have law officers present. Moreau acknowledged he could have had city police officers or sheriff's deputies on hand. The mere presence of security personnel would have had a dampening effect on the outbreak of violence and, of course, security officers might have intervened to prevent the assault that actually took place.

Defendant union makes a point of the fact that Murphy's assault on Dyke and Fincher took place in the public street. The basement of the union building seems to have been the place where union members normally met, but it was at this time closed to them because of the election. The sidewalk in front of the building was being replaced, and the small front lawn torn up. The lower parking lot was not yet finished, so that the union members gathered on the little travelled public street in front of the building and on unimproved land adjacent to the parking lot.

It is not significant that the assault took place in the public street off the premises actually possessed by defendant union, so long as there was a sufficient connection between the union's activities and the action which resulted in the injury. The union's duty did not end at the property line. Its duty could be found to extend to the adjacent areas where the danger was likely to appear, for some reasonable period of time. *See, Weirum v. R.K.O. Gen., Inc.,* 15 Cal.3d 40, 539 P.2d 36, 123 Cal.Rptr. 468 (1975); *Jones v. Oberg,* 52 Or.App. 601, 628 P.2d 773 (1981). Of course, we do not presume to say how far or how long.

We hold, therefore, the evidence made a submissible case against defendant union, and the court properly denied defendant union's motions for directed verdicts, and motions for judgment n.o.v.

Defendant union complains of plaintiffs' instructions which omitted any required finding that, as a result of the likelihood of violence during or after the election, "the premises were not reasonably safe." As we have pointed out, plaintiff was not required to prove the assault took place within the legal boundaries of defendant union's property. Such a hypothesis in an instruction could have introduced a false issue and could have been confusing to the jury. The finding was properly omitted from the instructions.

■ Defendant union says the verdicts are inconsistent, and the court erred in failing to return the jury for further deliberation with MAI 2.06 after the verdicts were returned, in accordance with the rule of *Douglass v. Safire,* 712 S.W.2d 373 (Mo. banc 1986), when defendant union suggested the inconsistency to the court. As noted above, the jury returned verdicts for compensatory damages for plaintiff Fincher against defendant Murphy in the amount of $9,600 and against the defendant union for $100,000. They returned verdicts for plaintiff Dyke for compensatory damages against defendant union for $25,000 (less

$1,250 for fault attributed to Dyke) and against defendant Murphy for $2,750.

This point requires a reversal and remand for a new trial on the issue of compensatory damages only, as we shall explain.

The defendants were joint tortfeasors. "The term joint tortfeasors embraces four distinct types of conduct: (1) concerted actions; (2) common duty; (3) vicarious liability; and (4) single, indivisible harm caused by independent, separate, but concurring torts of two or more persons." *Brickner v. Normandy Osteopathic Hosp., Inc.*, 687 S.W.2d 910, 912 (Mo.App.1985). The conduct of defendant union and of defendant Murphy was in the fourth category. Though their acts of wilfulness (on Murphy's part) and negligence (on the union's part) were separate and independent, the injuries caused each plaintiff thereby were single and indivisible. There is no such thing as separate judgments for different amounts against joint tortfeasors who are joined as defendants in the same action. *Barr v. Nafziger Baking Co.*, 328 Mo. 423, 41 S.W.2d 559, 564–65 (1931); *Neal v. Curtis & Co. Mfg.*, 328 Mo. 389, 41 S.W.2d 543, 557 (1931); *Hutchins v. Priddy*, 103 F.Supp. 601, 604 (W.D.Mo.1952); *Butler Mfg. v. Wallace & Tiernan Sales Corp.*, 82 F.Supp. 635, 636 (W.D.Mo.1949). Other cases are collected at: 27 Mo.Digest 2d *Judgments* §§ 240–241 (1984); 38 Mo.Digest 2d *Torts* § 22 (1985); 40 Mo.Digest 2d *Trial* § 335 (1985); and Annotation, *Propriety and Effect of Jury's Apportionment of Damages as Between Tortfeasors Jointly and Severally Liable*, 46 A.L.R.3d 801 (1972). (This, of course, has nothing to do with apportionment of damages among defendants on the basis of relative fault, in cases where such apportionment is appropriate.) The court erred in refusing defendant union's request that the jury be returned to their deliberations for the correction of its verdict, or verdicts. The jury should have been given other forms of verdicts patterned after MAI Form of Verdict 36.05, which would have allowed a single verdict in a single amount of compensatory damages for each plaintiff. This procedure was followed by the trial court,

and approved on appeal, in *Conway v. Kansas City Public Service Co.*, 234 Mo. App. 596, 125 S.W.2d 935 (1938), cert. quashed *State ex rel. Kansas City Public Service Co. v. Shain*, 345 Mo. 543, 134 S.W.2d 58 (1939). It is termed by *Prosser and Keeton on Torts* (5th ed. 1984), at p. 329, as "the most reasonable solution" where the jury improperly returns verdicts for separate amounts against two or more defendants. Prosser and Keeton cite as cases where this procedure has been followed: *Tuscaloosa v. Fair*, 232 Ala. 129, 167 So. 276 (1936); *Forslund v. Swenson*, 110 Neb. 188, 192 N.W. 649 (1923); *Chrudinsky v. Evans*, 85 Or. 548, 167 P. 562 (1917); *Cullen v. Minneapolis*, 201 Minn. 102, 275 N.W. 414 (1937).

■ Defendant union claims error in the damage instructions, MAI 4.01. Each plaintiff's damage instruction allowed the jury to compensate plaintiffs for damages he was "reasonably certain to sustain in the future." Defendant union claims future damages were not supported by the evidence. Future damages may not be submitted if they are not supported by the evidence. *Harrison v. Weller*, 423 S.W.2d 226 (Mo.App.1967). Since the case is to be retried on the issue of compensatory damages, we do not rule on this point. The parties and the trial court will take instruction from the parties' briefs.

### Defendant Murphy's Appeal

We turn now to defendant Murphy's appeal. His points relied on are aimed at the admission of various testimony alleged by him to have been erroneous.

Defendant Murphy says the court should have declared a mistrial after plaintiffs' counsel asked Kenny Moreau, union business agent: "And you were aware of his [Murphy's] reputation for violence, weren't you?" The question is said to be in violation of an in limine order of the court, but the record shows no such order by the court. The court denied defendant Murphy's request for a mistrial, and was correct in doing so.

Defendant Murphy says certain testimony of plaintiff Dyke was hearsay and was erroneously admitted. Plaintiff Dyke testified that before the election he had turned down defendant Murphy's request for support for his candidacy, and had said to him: "Murphy, you ain't going to draw me into a fight." Murphy had answered: "No, not now, wait till after the election." The testimony was not hearsay, and it was properly admitted.

Defendant Murphy's third point is aimed at plaintiff's attorney's asking plaintiff Fincher's wife: "Did you ever hear Billie Moreau say anything?" Defendant Murphy's counsel objected, but Mrs. Fincher answered, "I was afraid this...." Trial court sustained defendant Murphy's objection and instructed jury to disregard question and answer. Trial court was within his discretion in denying defendant Murphy's request for drastic remedy of mistrial. *Pierce v. Platte–Clay Elec. Coop., Inc.,* 769 S.W.2d 769 (Mo.1989); *Hawkins v. Compo,* 781 S.W.2d 128 (Mo.App.1989).

Defendant Murphy complains of plaintiffs' attorney's cross-examination which inquired about his earlier convictions for assault. Defendant Murphy says the questions should have been confined to the fact of the convictions without the details. That is true if the convictions are used for impeachment of witness. *State v. Sanders,* 634 S.W.2d 525 (Mo.App.1982).

■ As to the first of the convictions: Defendant Murphy testified on cross-examination that he had been convicted upon a plea of guilty of assaulting a police officer in a bar. There were several union members present, and business agent Moreau knew about the incident. Murphy himself was president of the union at the time. Both the conviction and the incident upon which the conviction was based were admissible to show the Union's notice of Murphy's rash and turbulent disposition.

The second of the two convictions was for the assault upon plaintiffs Fincher and Dyke, but it was not shown that the convictions were based upon this incident. No details of the conviction were shown, or attempted to be shown. Defendant Mur-

phy's continuing objection was not to the showing of the fact of the convictions, but only to the showing of the details, and it is only to the showing of details of the convictions that he complains here. This allegation of trial court error is not preserved for review.

The judgments against defendant Murphy are affirmed, except for the judgments for compensatory damages.

*Disposition of Appeal and Instructions to Trial Court*

The liability of the parties has been established by the verdicts, without reversible error, as we have held. The judgments as to liability of both parties for compensatory damages are therefore affirmed. The verdict against defendant Murphy for punitive damages has not been challenged, and is affirmed.

As for the proper disposition upon appeal with respect to the compensatory damage verdicts, some courts have simply entered judgment for plaintiff for the smaller of the two verdicts. *See, Wear–U–Well Shoe Co. v. Armstrong,* 176 Ark. 592, 3 S.W.2d 698 (1928); *Southwestern Gas & Elec. Co. v. Godfrey,* 178 Ark. 103, 10 S.W.2d 894 (1928); *Aitken v. White,* 93 Cal.App.2d 134, 208 P.2d 788 (1949); *Oakes v. McCarthy Co.,* 267 Cal.App.2d 231, 73 Cal.Rptr. 127 (1968); Annotation, *Apportionment of Torts Damages by Jury, supra* at § 6[d]. We elect not to do that, for we do not know if the jury intended to fix the respective plaintiffs' damages at the lower figure or the higher, or at the total of the two. If either plaintiff, however, elects to accept judgment for compensatory damages against both defendants for the amount represented by the lower of the compensatory damage verdicts, he may file such an election with the trial court within 15 days of the date of our mandate. *See Whitney v. Tuttle,* 178 Okla. 170, 62 P.2d 508 (1936). Whereupon, the trial court is directed to enter judgment accordingly. As to either plaintiff who does not elect to accept compensatory damages judgment against both defendants for the amount of the smaller verdict, his case is remanded for a new trial

against both defendants on the issue of compensatory damages only.

All concur.