

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **K.L.S.,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD81728** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **February 19, 2019** |
| **UNION PACIFIC RAILROAD AND** | ) | |
| **TIMOTHY ESPY,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Special Division:  Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

K.L.S. appeals from the Jackson County Circuit Court's grant of summary judgment in favor of Union Pacific Railroad and Timothy Espy (collectively "Union Pacific") on claims of negligence and negligence *per se*.  K.L.S. argues that the trial court erred in granting summary judgment in favor of Union Pacific because it was error to rule as a matter of law that Union Pacific did not have a duty to K.L.S.  K.L.S. further argues that the trial court erred in failing to strike two affidavits submitted by Union Pacific on its

Motion for Summary Judgment because they did not comply with Rule 74.04 as they were false or misleading. We affirm.

## Factual and Procedural History[1]

Gary Tauvar ("Tauvar") owns three properties located in close proximity to one another within Kansas City at the following addresses: 413 N. Park, 410 N. Olive Street, and 2325 Guinotte Ave. The properties were primarily used for storage of items, much of which was not located within a building or structure and included several inoperable school buses. The southern two properties of land consist of 413 N. Park and 410 Olive Street and adjoin each other. Union Pacific has an easement for its railroad right-of-way running along the south side of these two properties. There is a public alleyway along the north side of these two properties, controlled by the City of Kansas City, Missouri ("City"), which intersects Park Street on the west and Olive Street on the east. The third property, 2325 Guinotte, is located north of the other two properties, separated from them by the public alleyway. There are no railroad right-of-ways or tracks that run adjacent to the property located at 2325 Guinotte, nor does that property abut any property owned or controlled by Union Pacific.

Tauvar's properties were in violation of certain fencing requirements of Chapter 80 of the City's Code ("Zoning Code") as well as other code violations. The Zoning Code required that since the property was used for storage, a cyclone-type fence at least eight feet in height is required to enclose the property to keep it from public access and view. A

---

[1] In reviewing the grant of summary judgment we review the record in the light most favorable to the party against whom judgment is entered. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

dispute arose between Tauvar and Union Pacific regarding the exact property line between Union Pacific's easement and Tauvar's two properties abutting the easement. Tauvar alleged that he had installed fencing to comply with the Zoning Code but Union Pacific had repeatedly removed portions of the fence in the area that abutted the railroad easement.

The City notified Tauvar multiple times over many years, starting in 1995, of the requirement to fence the property because it was being used for the exterior storage of materials and alleging that he was in violation of the Zoning Code. Tauvar notified the City of the boundary line dispute between he and Union Pacific and his allegation that Union Pacific had been removing his fence. K.L.S. was an employee of the City who worked in the zoning compliance area and was the main person with the City attempting to obtain compliance for these properties.

These properties were in a high crime area. In 2009 an inspection found that at least one homeless person was living in one of the busses stored on the property and a methamphetamine lab was being operated out of one of the unused buildings on the property. From 2008 through the incident in 2012 there were continuing correspondence and conversations between K.L.S. on behalf of the City, Tauvar, and Union Pacific regarding the zoning violations, the boundary line dispute, and the required fencing of the properties.

During e-mail correspondence between Union Pacific and Tauvar regarding the ongoing property dispute, Tauvar asked Union Pacific to "keep[] an eye out" for an identified male who used to help Tauvar but had recently been seen by neighbors parking on the railroad tracks and going into the east side of Tauvar's building. Tauvar believed he

3

was stealing or otherwise committing criminal offenses on the property. The message was forwarded by Espy, a Union Pacific Police Officer, to others who worked for Union Pacific, asking if Union Pacific could help Tauvar by increasing patrols near his property.

K.L.S. had visited Tauvar's property approximately 30 times to check on zoning compliance. On January 26, 2012, around 11:30 a.m., K.L.S. drove to the area of Tauvar's properties to photograph zoning violations on the property. K.L.S. parked and exited her vehicle on Olive Street. K.L.S. was in the public alleyway, preparing to take a photograph, when she was hit with a blunt object in the back of the head by an unknown assailant and knocked unconscious. The attacker then proceeded to beat K.L.S., sexually assault her at knifepoint, and steal items of personal property belonging to her and to the City. K.L.S. was then again knocked unconscious. She regained consciousness around 1:30 p.m. and called the police. The assailant was never identified or prosecuted.

In January 2015, K.L.S. filed suit alleging negligence and negligence *per se* against Tauvar[2] and negligence and negligence *per se* against Union Pacific and certain of its employees and "liability for unlawful acts"[3] against Union Pacific.

Union Pacific filed a Motion for Summary Judgment on March 21, 2017. K.L.S. filed a Response and Suggestions in Opposition on May 22, 2017. On July 13, 2017, K.L.S filed a Motion to Strike Defendants Summary Judgment Affidavits, which included affidavits from Roger Poteet ("Poteet") and Steven Whitaker ("Whitaker"), which were

---

[2] The claims against Tauvar were dismissed by K.L.S. below and are not part of this appeal.

[3] The "unlawful acts" included, stealing of the fence constructed by Tauvar, trespass on the property owned by Tauvar for the removal or destruction of the fence, and violation of the City Zoning Code by removing the fence which had been constructed on the property.

4

among the exhibits submitted in support of Union Pacific's Motion for Summary Judgment. K.L.S. argued that Poteet's affidavit was untrue, or at best incompetent, because he gave sworn statements in the affidavit regarding the location of Union Pacific's northern ballast line between 1992 and 2011, but testified at a later deposition that the location was merely his assumption and he does not know the dimensions of the right-of-way. K.L.S. argued that Whitaker's affidavit was false and misleading because in the affidavit Whitaker testified that his opinion was based upon a Commissioners' Report from a case where land was condemned for a railroad right-of-way, but testified at a later deposition he actually relied on a survey conducted by the railroad in 1911 and he could not testify that any land was actually condemned.

On July 24, 2017, Union Pacific filed a Suggestion in Opposition to Plaintiffs' Motion to Strike Summary Judgment Affidavits. In the Suggestions, Union Pacific withdrew and did not, for purposes of its summary judgment pleadings, "rely on Mr. Poteet's Affidavit testimony concerning [Union Pacific's] 'Highline', or 'Lowline' railroad tracks, the ballast under those tracks, those tracks' subgrade and land underneath the ballast from 1992 when Mr. Poteet entered the [Union Pacific] Claims Department to his retirement in September 2011." In the Suggestions, Union Pacific also withdrew "any argument from its summary judgment pleadings or references in Mr. Whitakers' Affidavit that any land was actually condemned in the action underlying the Commissioners' Report."

On August 18, 2017, Union Pacific filed a Motion to Limit the Scope of the Courts Review of its Two Pending Motions for Summary Judgment. In the Motion, Union Pacific

5

"specifically withdraws from its Response/Reply to Plaintiffs' Additional Statement of Materials [sic] Facts reliance upon the Affidavit of Roger Poteet or the Affidavit of Steven Whittaker." On August 21, 2017, K.L.S. filed Motions for Sanctions due to the false or misleading affidavits by Poteet and Whittaker. On February 2, 2018, a hearing was held on Union Pacific's Motion for Summary Judgment. On July 6, 2018, the court granted the motion in favor of Union Pacific and its employees. This timely appeal followed.

## Standard of Review

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows. *Id.*
>
> A defending party … may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.*

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011).

## Analysis

K.L.S. raises two points on appeal. In her first point K.L.S. argues that the trial court erred in granting Union Pacific's motion for summary judgment because it was error to rule as matter of law that Union Pacific did not owe a duty to K.L.S. K.L.S. contends it was foreseeable that the conduct of a third person could cause harm to K.L.S., Union Pacific's conduct increased the risk of injury in the area, K.L.S. was an invitee, and Union Pacific assumed a duty of care. In her second point on appeal, K.L.S. argues that the trial court erred in failing to strike the affidavits of Poteet and Whitaker because the affidavits did not comply with Rule 74.04 since they were false and/or misleading.

## Point One

In Point One, K.L.S. argues that the trial court erred in granting Union Pacific's motion for summary judgment because it was error to rule as a matter of law that Union Pacific did not have a duty to K.L.S. K.L.S. first argues that Union Pacific had a duty under the traditional principles of negligence law because special facts and circumstances clearly established that it was foreseeable that the conduct of a third person could harm K.L.S. K.L.S. argues that the high crime rate and the nature of the business made it foreseeable that a third person could cause K.L.S. harm. K.L.S. further argues that Union Pacific owed her a duty because it was foreseeable that by removing Tauvar's fence and/or failing to resolve the property dispute, it would result in someone getting hurt.

"A petition seeking damages for negligence must allege ultimate facts which, if proven, show: 1) the existence of a duty on the part of the defendant to protect the plaintiff from injuries; 2) a breach of that duty; 3) causation; and 4) injury to the plaintiff." *Thiele*

7

*v. Rieter*, 838 S.W.2d 441, 442 (Mo. App. E.D. 1992). "The touchstone for the creation of a duty is foreseeability." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018) (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002)). "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Id.*

However, the Supreme Court of this state has recognized two exceptions to the general rule that a business has no duty to protect an individual against the criminal acts of a third party. These two exceptions referred to as "special facts and circumstances" can give rise to liability. *Id.*

> The [rule] underscores two rather different situations in which the duty may arise. **The first is when the defendant knows, or has reason to know, that a third party is harming or is about to harm an entrant.** At this point the defendant may be able to protect the entrant only by warning him, summoning the police, or utilizing already available security measures. **The second is when the nature of defendant's business or past experience provides a basis for the reasonable anticipation on defendant's part that the criminal activity of third persons might put entrants at risk.** In this class of cases the defendant may be liable for failing to adopt security measures which might have kept the third person from inflicting harm upon the entrant. The distinction between these categories is significant, because the duty to foresee a general risk of criminal activity and to take steps to safeguard entrants from it may require substantial expenditures on the part of the possessor.

*Id.* at 848-849 (quoting the Law of Premises Liability § 11.03[1], 11-6).

K.L.S. does not dispute that the first exception is inapplicable to this case. K.L.S. solely argues that Union Pacific owed her a duty under the second exception. "Under the second exception, the attacker is unknown but, due to prior attacks on the premises, a duty arises to protect invitees because subsequent attacks become foreseeable." *Thiele*, 838

8

S.W.2d at 443. "In other words, with the second exception, the business is tasked with taking precautionary actions to protect its business invitees against the criminal activities of unknown third parties." *Wieland*, 540 S.W.3d at 849 (internal quotations omitted). However, "[b]oth of these exceptions only relate to attacks on the premises." *Thiele*, 838 S.W.2d at 443.

It is undisputed by the parties that K.L.S. was not on property owned by Union Pacific but in a public alleyway when she was attacked. K.L.S. was not even on property where the ownership was disputed between Union Pacific and Tauvar. K.L.S. was standing in a public alleyway located on the opposite end of Tauvar's property from where Union Pacific railroad tracks lay. There was no evidence in the record to establish that Union Pacific was aware of the significant criminal activity in the area.[4] K.L.S. relies on an e-mail from Tauvar to an employee of Union Pacific regarding a distinct circumstance of a known person entering Tauvar's property illegally. While K.L.S. alleges that Union Pacific agreed to provide increased security patrols based on Tauvar's e-mail, a closer reading of the e-mail exchange only shows that one employee of Union Pacific contacted another employee of Union Pacific asking if they could assist Tauvar by increasing patrols in the area. Nothing in the record establishes that Union Pacific committed to actually providing additional patrols or the nature and extent of any agreement for additional patrols. Even given the high crime rate in the area, Union Pacific was under no duty to protect persons who are located in areas distinctly separated from any property Union Pacific owned.

---

[4] There was evidence in the record to establish that within a 1 1/2 mile of the location of the attack significant violent crime had consistently occurred over several years prior to this attack. There was no evidence that Union Pacific was aware of this criminal activity.

9

Under these facts, K.L.S. was not owed a duty by Union Pacific under the second exception.

K.L.S. contends that whether or not the attack occurred on Union Pacific's property is irrelevant citing *Fincher v. Murphy*, 825 S.W.2d 890 (Mo. App. W.D. 1992). In *Fincher*, Fincher was injured when he was attacked by Murphy outside a union hall, following a contentious union election. Prior to the attack, the union officials were acquainted with Murphy, "a large and muscular man, standing six feet one inch in height and weighing 242 pounds." *Id* at 892. The Union knew him as "a person of turbulent disposition who had been convicted for assault," and who had been involved in prior altercations which ended in violence. *Id.* The Union was put on notice of the possibility of violence due to specific information, including that the election was contentious, Murphy had made an implied threat of violence against Fincher prior to the election, and a Union agent had heard rumors that there might be trouble in connection with the election. *Id.*

Murphy and others gathered in a crowd on the street outside the election hall while they awaited the results. *Id.* The union hall was closed to them while the results were tabulated. *Id.* at 893. The union provided no security nor requested law enforcement assistance. *Id.* Fincher, who supported Murphy's election opponent, exited the hall and was attacked by Murphy. *Id.* Fincher sued Murphy and the Union. *Id.*

This Court in *Fincher* found the Union to be subject to liability because there was a sufficient connection between the Union's activities and the action which resulted in the injury to impose a duty to take reasonable steps to protect Fincher for a reasonable period of time from those on the street adjacent to its union hall. *Id.* *Fincher* falls into the "special

10

facts" exception concerning the intentional infliction of injury by a known and identifiable third party. *Id.* This case does not fall into that exception as K.L.S.'s attacker was not known to or identifiable by Union Pacific before or even subsequently to the attack. Further, unlike in *Fincher* where there were employees nearby that would be able to observe the attack and offer assistance, here no Union Pacific employees were present that could have prevented the attack or intervened on K.L.S.'s behalf.

K.L.S. further relies on *Richardson v. Quicktrip Corp.*, 81 S.W.3d 54 (Mo. App. W.D. 2002). In *Quicktrip*, Richardson was raped by an unknown assailant in the ladies' restroom of a Quicktrip Convenience Store. *Id.* at 57. Quicktrip was found liable for Richardson's injuries because there had been recent criminal activity at and near the store and the nature of the business made it susceptible to crime. *Id.* at 65-66. However, this case is distinct from *Richardson* in that Richardson was attacked on Quicktrip property, whereas K.L.S. was attacked in a public alleyway which was not on or even adjacent to Union Pacific's property. Again, K.L.S. was not attacked on any property owned or possessed by Union Pacific, but rather she was attacked in a public alleyway located at the opposite side of Tauvar's property from where Union Pacific's railroad tracks abut.

K.L.S. next argues that Union Pacific owed her a duty because she was an invitee when she was attacked and Union Pacific created or increased the risk of injury to K.L.S. K.L.S. cites to *Aziz v. Jack in the Box, Eastern Div., LP*, 477 S.W.3d 98 (Mo. App. E.D. 2015) and *Wilkins v. Allied Stores of Missouri*, 308 S.W.2d 623 (Mo. 1958) for support.

In *Aziz v. Jack in the Box*, Aziz and his passenger drove into the parking lot of a restaurant owned by Defendant. *Aziz*, 477 S.W.3d at 101. Aziz was beaten and kicked in

11

the parking lot by third party assailants. *Id.* The Eastern District of this Court found that Defendant owed Aziz a duty of care because Aziz was an invitee of Defendant at the time of the attack since he was on Defendant's property as a potential customer. *Id.* at 106. In *Wilkins v. Allied Stores of Missouri*, Wilkins slipped and fell on the terrazzo floor of the entranceway of Defendant's store. *Wilkins*, 308 S.W.2d at 624. The Court found Defendant's owed Wilkins a duty of care as an invitee because she was a prospective customer on Defendant's premises. *Id.* at 628.

Again, this case is distinguishable from both *Aziz* and *Wilkins* as K.L.S. was not on property owned or possessed by Union Pacific and was not a customer of Union Pacific. The injured plaintiffs in both *Aziz* and *Wilkins* were on property owned by the defendants. Here, K.L.S. was attacked by an unknown assailant while in a public alleyway which was not even adjacent to any property owned by Union Pacific. Further, unlike in *Aziz* and *Wilkins* where there were employees of the defendant present who could have intervened, there were no Union Pacific employees present who could have observed, known about or intervened in the attack.

K.L.S. then argues that Union Pacific owed her a duty because they were a possessor of Tauvar's property since they occupied the disputed portion of the property with the intent to control it. We need not address whether Union Pacific possessed Tauvar's property because it is undisputed that K.L.S. was attacked in a public alleyway and not on property owned by Union Pacific or even on property with disputed ownership between Union Pacific and Tauvar.

12

K.L.S. lastly argues that Union Pacific assumed a duty to resolve the property dispute and provide more security patrols. K.L.S. argues that Union pacific assumed the duty to resolve the property dispute between it and Tauvar and that by failing to resolve the dispute K.L.S. was forced to go to that location to take pictures of the zoning violation when she was attacked. She argues that but for Union Pacific's failure to resolve the boundary line dispute, Tauvar would have had the property properly fenced and there would not have been a need to K.L.S. to go to that location to photograph the zoning violations. K.L.S. further argues that Union Pacific voluntarily undertook a duty to assist Tauvar in patrolling the property to watch for criminal activity.

"Missouri courts recognize that a defendant can assume a duty." *Bowan ex rel. Bowan v. Express Med. Transporters, Inc.*, 135 S.W.3d 452, 457 (Mo. App. E.D. 2004). "If a defendant assumes a duty, by contract or by conduct, he can be held liable for injuries caused by the unsafe performance of that assumed duty." *Id.* "[O]ne who acts voluntarily or otherwise to perform an act, even when there was no duty to act originally, can be held liable for the negligent performance of the act." *Id.* at 458.

However, while Union Pacific assumed a duty to resolve the property dispute, the fact that they did not prior to K.L.S.'s attack was not the proximate cause of K.L.S.'s injuries. K.L.S. had come to observe and document zoning violations on Tauvar's property on multiple occasions prior to January 26, 2012. At the time of the attack, K.L.S. was not taking pictures of the lack of fencing that abutted Union Pacific's railroad tracks, which ran along the southern border of Tauvar's property. When she was attacked K.L.S. was taking a picture of the holes in the fence at the opposite end of the Tauvar's property where an

13

abandoned school bus was stored. Further, there were zoning violations other than the alleged removal of the fence on Tauvar's land which would have caused K.L.S. to go to Tauvar's property irrespective of the boundary line dispute.

K.L.S. also alleges that Union Pacific assumed a duty to provide security patrols for this property. In support of this allegation, K.L.S. points to a March 24, 2010 e-mail between Tauvar and an employee of Union Pacific, where he stated that he hoped Union Pacific "won't mind keeping an eye out" for a certain known person that had been reported to have trespassed on the railroad right-of-way to gain access to certain buildings on Tauvar's property. Tauvar provided a vague description of the person and the vehicle that person was alleged to be driving. There is nothing in the record to support an inference that the person described in the e-mail was the person who assaulted K.L.S. Following receipt of this e-mail, the Union Pacific employee sent an e-mail to the Union Pacific police department asking "can we help him with some patrols near his property???" Based solely on these two e-mails, K.L.S. argues that Union Pacific undertook a duty to provide security patrols near Tauvar's property. Union Pacific, neither internally nor to Tauvar, agreed to actually provide extra security patrols. No evidence was provided that the K.L.S. was made aware of these emails or relied on them in anyway. Union Pacific never assumed a duty to provide extra security patrols. *See Hudson v. Riverport Performance Arts Centre*, 37 S.W.3d 261, 266-67 (Mo. App. E.D. 2000) ("To establish a business assumed a duty to protect their invitees against actions of third parties, there must be a showing that there was an express assurance of safety to the invitee and the invitee relied on those assurances."); *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 922 (Mo. App. W.D. 2004) (held that by only

14

requesting a traffic impact study Hy-Vee did not assume a duty to implement the findings of the study).

Under these facts we find no duty owed by Union Pacific to K.L.S. to prevent her from being criminally attacked by an unknown third party in a public alleyway, which was not on or adjacent to any property owned by Union Pacific. Point One is affirmed.

**Point Two**

In her second point on appeal, K.L.S. argued that the trial court erred in failing to strike the affidavits of Poteet and Whitaker or even rule on her motion to strike the affidavits or motion for sanctions prior to ruling on the motion for summary judgment because the affidavits did not comply with Rule 74.04. K.L.S. argues that the affidavits of Poteet and Whitaker were false and/or misleading.

After K.L.S. filed Plaintiffs' Motion to Strike Summary Judgment Affidavits, Union Pacific filed a Suggestion in Opposition to her motion to strike. In the Suggestions, Union Pacific withdrew and affirmatively stated that it did not, for purposes of its summary judgment pleadings, "rely on Mr. Poteet's Affidavit testimony concerning [Union Pacific's] 'Highline', or 'Lowline' railroad tracks, the ballast under those tracks, those tracks' subgrade and land underneath the ballast from 1992 when Mr. Poteet entered the [Union Pacific] Claims Department to his retirement in September 2011." In the Suggestions, Union Pacific also withdrew "any argument from its summary judgment pleadings or references in Mr. Whitakers' Affidavit that any land was actually condemned in the action underlying the Commissioners' Report." Union Pacific even filed a Motion to Limit the Scope of Courts Review of its Two Pending Motions for Summary Judgment. In the Motion, Union

15

Pacific "specifically withdraws from its Response/Reply to Plaintiffs' Additional Statement of Materials [sic] Facts reliance upon the Affidavit of Roger Poteet or the Affidavit of Steven Whittaker."

As both Poteet and Whittaker's affidavits were withdrawn, there was nothing left for the trial court to strike. The relief sought by K.L.S. was to have the affidavits stricken and removed from the court's consideration in ruling on summary judgment. As a result of Union Pacific withdrawing the affidavits and any argument relating to the affidavits, K.L.S. received the relief she was seeking. K.L.S.'s motion to strike the affidavits became moot when Union Pacific withdrew the affidavits and arguments relating to the affidavits because a request is moot when the question presented for decision seeks a ruling upon an issue which, if judgment were rendered, it would have no practical effect upon any existing controversy. *Kracman v. Ozark Elec. Co-Op., Inc.*, 816 S.W.2d 688, 690 (Mo. App. S.D. 1992). The trial court did not err in failing to rule on K.L.S.'s motion to strike as it was moot. Further, the facts contained in the affidavits in question were unnecessary in the court's ruling on the motion for summary judgment. Point Two is denied.

We finally note that Union Pacific claims that this a frivolous appeal and sanctions should be awarded. Rule 84.19 provides that "[i]f an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." "A frivolous appeal is one that presents no justiciable question and is so readily recognizable as devoid of merit that there is little prospect that it can ever succeed." *Prenger v. Baumhoer*, 939 S.W.2d 23, 28 (Mo. App. W.D. 1997). K.L.S.'s appeal was compelling and supported by authority. Union Pacific's request for sanctions is denied.

16

## Conclusion

The trial courts judgment is affirmed.

_____
Gary D. Witt, Judge

All concur

17